# DAVIS et al., Appellants v. HOFFMAN.

## Division One, March 12, 1902.

1. **Trust Funds: TORTFEASORS: JOINT PROFITS BETWEEN SPECULATORS: SECRET SYNDICATE.** It is held in this case that the defendant, to whom were deeded certain lands as trustee for a certain syndicate, was responsible not only for the $3,500, the profit to himself, but for the $10,500, the profit which he and two others who formed a secret inner syndicate within the other outer syndicate, jointly realized by the entrusting to them of $21,000 by the other partners on the representation to them that such was their share of the purchase price of the land, when in fact is was only half that sum. The funds thus placed in the defendant's hands were trust funds, and he is responsible to the uninformed partners for the whole of it, and he can not excuse himself by showing that he got only $3,500 of the $10,500 thus deceptively obtained from the other partners, and that the remaining $7,000 went to his other two joint deceivers.

2. ———: **MISAPPROPRIATION: LIABILITY.** One who has misappropriated trust funds (that is, does not spend them for trust purposes) is liable for the whole of them, and it is immaterial how he spent them, or who participated in the misappropriation, or profited by that act.

3. ———: **TORTFEASORS: SECRET INNER SYNDICATE: PERMITTING DEED OF TRUST.** Where one to whom is deeded land in trust as representative of a syndicate of purchasers, permits a deed of trust to be made thereon, for the benefit of the members of an inner secret syndicate, he is responsible to all partners outside the secret for their proportional part of the money derived from the mortgage, whether or not he shared in the profits of the secret transaction.

Appeal from St. Louis City Circuit Court.—*Hon. Horatio D. Wood,* Judge.

REVERSED AND REMANDED *(with directions).*

*Geo. W. Taussig, Collins, Jamison & Chappell, Rassieur & Rassieur* and *J. Clarence Taussig* for appellants.

(1) The contract between Hoffman, Miltenberger and McCasland constituted them partners in the business of "purchasing, handling and selling" Beacon Heights. 1 Lindley Partn., p. 13; Snyder v. Burnham, 77 Mo. 52; Getty v. Devlin, 54 N. Y. 403; Chester v. Dickinson, 54 N. Y. 1. (2) Hoffman, McCasland and Miltenberger were joint tortfeasors; each is liable to plaintiffs for all money received by them and each of them. Hornblower v. Crandall, 7 Mo. App. 220; s. c., 78 Mo. 581; Alger on Promoters, sec. 58, p. 63; sec. 92, p. 101; sec. 157, p. 165; sec. 76, p. 84; People v. Tweed, 5 Hun (N. Y.), 388; Getty v. Devlin, supra; Stiles v. White, 11 Met. 356; Walsham v. Stainton, 1 DeGex, J. & S. 678; Mayor v. Lever, 25 Q. B. D. 363; affirmed 1 Q. B. 168; South Joplin Land Co. v. Case, 104 Mo. 572; Exter v. Sawyer, 146 Mo. 302; Bigelow on Frauds (Ed. 1888), pp. 240, 245; Chester v. Dickinson, supra. (3) Hoffman is liable for the $2,395.30 paid the McCaslands and the $8,400 "second mortgage" given by him to McCasland. He knew that these amounts were secret profits; that they were not for the true, actual purchase price to the real owner of the property. Alger on Promoters, secs. 64, 77; Hichens v. Congreve, 4 Russ. 562; 1 Russ. & Myl. 150, note; Beck v. Kantorowicz, 3 Kay & J. 230; Bagnell v. Carlton, 6 Ch. D. 371; Mining Co. v. Grant, 11 Ch. D. 918; Chandler v. Bacon, 30 Fed. 538; Whaley Bridge v. Green, 5 Q. B. Div. 109. (4) Defendant promoted the organization of the Beacon Heights syndicate; having acted as agent and trustee of plaintiff's in the purchase of the property, he occupied a fiduciary relation to the plaintiffs, and could make no secret profit out of the purchase or sale of said property, or knowingly permit anyone else to make such a secret profit. For such secret profit made out of the deal he is liable. Exter v. Sawyer, supra; South Joplin Land Co. v.

Case, supra; People v. Tweed, 5 Hun 504; Hornblower v. Crandall, 78 Mo. 581; 1 Lindley on Partn., 580. (5) Hoffman is liable to plaintiffs for one-half of the difference between the actual purchase price to Denison, $61,204.70, and $93,000, the price at which he put in the property to plaintiffs. Alger on Promoters, sec. 58, p. 63; Fountain Spring Co. v. Roberts, 92 Wis. 345; Boston v. Simmons, 150 Mass. 461; Emery v. Parrott, 107 Mass. 95; People v. Tweed, supra.

*R. T. Stilwell* and *J. M. Holmes* for respondent.

In a proceeding in equity to charge a trustee with profits which he has received in violation of his duties to his *cestui que trust,* only the actual profits which he has received can be recovered. The recovery can not include profits made by others. Hunter v. Hunter, 50 Mo. 445; Bent v. Priest, 86 Mo. 475; Bowers v. Toronto, 11 Moore P. C. 463; Tyrrel v. Bank of London, 10 H. L. C. 26.

MARSHALL, J.—This is a bill in equity, by George W. Davis, Hubert P. Taussig, John Low and Alfred M. Baker, for an accounting and recovery of profits alleged to have been made by defendant, in a real estate transaction in East St. Louis, Illinois. The circuit court rendered judgment for the plaintiffs for $16,211. Both parties excepted and each filed a motion for new trial, the plaintiffs claiming that the judgment should have been in their favor for $15,897.65, with interest from November 20, 1892, and the defendant claiming, in his brief, but not in his motion for new trial, *inter alia,* that the judgment should have been against him for only $3,500, with interest. The circuit court overruled the plaintiff's motion for a new trial, and sustained the defendant's motion for a new trial, assigning as ground for so doing: "That the judgment is against the law in including as damages against the defendant, profits made by other associates; whereas, it should have been for the profit made by himself only, to-wit,

the sum of thirty-five hundred dollars, with interest." This point is not made in the defendant's motion for a new trial, but that motion was based upon alleged errors in the admission and exclusion of evidence; that the judgment was against the evidence, the law, and the weight of the evidence; and that the judgment should have been for the defendant instead of for the plaintiffs. The plaintiffs appealed from the order granting the new trial.

The case made below was this: On April 15, 1892, George Denison and J. S. Dobyns purchased from Lucie Beekin, a tract of land just outside of East St. Louis, called "Beacon Heights" for $57,600, of which $10,000 was paid by them in cash, and the balance evidenced by notes secured by a deed of trust. Denison and Dobyns did not take the title in their own names, but had it conveyed to one Gunn, and he executed the notes and deed of trust. Afterwards, Denison and Dobyns caused Gunn to execute a second mortgage on the land, securing a note for $28,800, which was made payable to Dobyns. Then they caused Gunn to execute a quitclaim deed to Denison conveying to him the equity of redemption. Then Denison entered into a contract with C. O. and J. T. McCasland wherein it was agreed that they should sell the land, and after paying Mrs. Beekin the balance due her of $47,600, with interest, and after paying Denison the $10,000 that had been paid Mrs. Beekin as the cash payment, with interest, whatever was left of the $28,800, represented by the second mortgage and all benefits arising from the sale of the equity of redemption, was to be divided between the McCaslands, on the one side, and Denison and Dobyns, on the other, in equal parts. This agreement was recorded August 5, 1892.

The McCaslands agreed to sell the property to the defendant for $72,000. The defendant formed a syndicate to buy it, composed of himself, J. T. McCasland, George W. Davis, William H. Miltenberger, Hubert P. Taussig, who each agreed to take and pay for a sixth part thereof, and John

Low and Alfred Baker, who each agreed to take and pay for a twelfth part thereof. The defendant represented to the syndicate that the price to be paid for the property was $93,000. The defendant was constituted the trustee to receive the amounts each member of the syndicate was to pay, and to purchase the property and take the title in his name as trustee. The $93,000, the purchase price by the terms of the syndicate agreement, was to be made up as follows: "$42,000 cash; assume an incumbrance now on the property, running one and two years of $42,600, together with interest due thereon, and make a second mortgage of $8,400, due in sixty days." In point of fact the incumbrance then due on the property amounted with accumulated interest to $47,588. This agreement was signed November 9, 1892.

In accordance with this arrangement and upon demand of defendant, Taussig paid, first, $300, and later $7,000; Davis paid $6,700; Baker paid $3,350, and Low paid $3,350, aggregating $21,000, which was collected from them upon the theory that $42,000 cash had to be paid, and that the defendant, J. T. McCasland and W. H. Miltenberger would pay the other $21,000, that is $7,000 each. In fact, none of these three paid a cent of the alleged $42,000 cash payment, nor was any such amount to be paid to Denison, Dobyns and McCasland for the property, as will more fully appear hereinafter.

There was, however, a syndicate within a syndicate—a wheel within a wheel. On October 15, 1892, the defendant, Miltenberger, and J. T. McCasland formed the inner circle, and agreed to buy the property for $72,000, and to share equally all the emoluments and profits of every nature arising therefrom.

In the meantime, the agreement between Denison, Dobyns and McCasland was modified, and Denison and Dobyns agreed to sell the property for $61,204.70, made up of the balance due Mrs. Beekin $47,588, the $10,000 cash paid by

Denison and Dobyns with six months interest, amounting to $350, some expenses Denison and Dobyns had paid, amounting to $266.70, and $3,000 profit to Denison and Dobyns, aggregating $13,616.70 to Denison and Dobyns and $47,588 to Mrs. Beekin.

Thus, McCasland was getting the property from Denison and Dobyns for $61,204.70, and was selling it to the inner syndicate, composed of himself, the defendant and Miltenberger for $72,000, and the inner syndicate was selling it to the outer syndicate, composed of these three and the plaintiffs, for $93,000. And all the time neither the defendant nor McCasland nor Miltenberger was paying a cent.

Finally after collecting the $21,000 from the plaintiffs, the defendant, acting as trustee, purchased the property. It was done in this way. McCasland released on the record the agreement of August 5, 1892, relating to dividing the profits arising from the $28,800 mortgage and from the sale of the equity of redemption. Denison and Dobyns released and cancelled the mortgage for $28,800, Denison made a deed to Hoffman, the consideration being stated to be $93,000, and with the $21,000 contributed by the plaintiffs the defendant paid as follows: Lucie Beekin, note and interest (part of deferred purchase price) $5,175; Denison $13,616.70; C. O. McCasland, $2,395.30. Thereafter on the same day, November 16, 1892, the defendant made a note for $8,400 to the order of C. O. McCasland, and secured it by a second mortgage on the property. The note was discounted and the inner syndicate, J. T. McCasland, Miltenberger and the defendant, divided the proceeds between them.

Thereafter the defendant gave declarations of trust to the several parties. Miltenberger and McCasland sold their interest in the property, and the plaintiffs and the defendant, and the assignees of Miltenberger and J. T. McCasland, paid the balance due Mrs. Beekin, and the second mortgage for $8,400 given by defendant as aforesaid.

Thus the matter remained for some years until the plaintiffs discovered the facts to be as here stated, and they then instituted this action.

The circuit court first held that the plaintiffs were entitled to recover $11,604.15, with interest, and afterwards held they were entitled to recover only $3,500. The $11,604.15 was made up, according to defendant's contention, of the one-sixth share of the $21,000 which each of the inner syndicate made (by not contributing anything themselves) amounting to $3,500 each, aggregating $10,500, and an alleged error of $1,000 which the court is said to have made in charging the defendant with $1,000 paid to McCasland, but claimed not to be connected with this transaction. This, however, accounts for but $11,500 of the $11,604.15, which the court first found the plaintiffs could recover. It accounts, however, for the ruling on the motion for new trial that the plaintiffs are entitled to recover from the defendant only the portion of the secret profits he received, stated to be $3,500.

## I.

The representations in the contract of purchase signed by the plaintiffs, the defendant, McCasland, and Miltenberger that the property was to cost $93,000 and that $42,000 was to be paid in cash, were untrue and were known to the defendant and McCasland and Miltenberger to be untrue. They knew that McCasland offered the property to the defendant for $72,000. The $21,000 difference represented nothing of value and one-half thereof (which the plaintiffs would have been deceived into paying) represented a part of the secret profits the ianner syndicate intended to pocket. In fact, $93,000 never was paid. Denison and Dobyns reduced their first proposition to McCasland from an agreement to sell subject to balance due Mrs. Beekin of $47,588, and subject to the second mortgage to Dobyns of $28,800, and out of the latter sum to pay

Denison $10,000 and interest, and to divide the balance thereof between them, to a flat agreement to sell for $61,204.70, of which·Denison was to get $10,408.30, the cash payment made by him to Mrs. Beekin, and interest, and $208,40 expense paid by him, and $3,000 profit, aggregating $13,616.70, and the purchasers were to pay Mrs. Beekin the balance due her of $47,588. It was under this latter agreement that the property was sold. It was conveyed by Denison to the defendant and not by C. O. McCasland as the contract of purchase stated. C. O. McCasland never had any title to the property, and never had any interest in the matter except as a co-partner with J. T. McCasland in the real estate business, with whom the first arrangment for the sale of the property was made, but which was afterwards rescinded and the new arrangement above set forth was made.

It is claimed that $72,000 was paid for the property, and it is figured out in this way:

Beekin mortgage assumed and paid........$47,588.00
Check to George Denison...............  13,616.70
Second mortgage to C. O. McCasland paid....   8,400.00
Paid J. T. McCasland ..................   2,395.30

                                $72,000.00

The contract of purchase specified, however, that the incumbrance on the property was only $42,600, and this was all the plaintiffs agreed to assume. In fact, it was $47,588. The difference, $5,000 (in round numbers) with interest, the defendant wrongfully paid out of the $21,000 contributed by the plaintiffs. The remainder, $42,600 with interest, was afterwards paid by all the plaintiffs, the defendant, and the assignees of McCasland and Miltenberger in their proper proportions. The whole of the $13,616.70 paid to Denison came out of the $21,000 contributed by the plaintiffs. The defendant, McCasland and Miltenberger paid no part of it. The

same is true of the $2,395.30 paid to McCasland.   The $8,400 mortgage to C. O. McCasland was afterwards paid by said parties in proportion to their holdings.   So that of the $72,000 so claimed to be paid for the property, the plaintiffs' money paid as follows:

| | |
|---|---:|
| Denison | $13,616.70 |
| Mrs. Beekin | 5,000.00 |
| J. T. McCasland | 2,383.30 |
| | $21,000.00 |

and also

| | |
|---|---:|
| One half deferred debt to Mrs. Beekin | $21,300.00 |
| One half mortgage to C. O. McCasland | 4,200.00 |
| | $46,500.00 |

And the balance of the $72,000, amounting to $25,500, was paid by the defendant and the assignees of McCasland and Miltenberger.   Thus it will be seen that even if the true purchase price was $72,000, the plaintiffs have paid $10,500 more than their proportion of it.

This same result follows if the transaction be divided in two parts, to-wit, the cash payments and the deferred payment. The cash payments were $13,616.70 to Denison, $5,000 to Mrs. Beekin, and $2,383.30 (in fact the amount was $2,395.30) aggregating $21,000.   The defendant paid this with the $21,000 collected from the plaintiffs.   The defendant paid Mrs. Beekin $175 interest on the $5,000, and he paid to Mc-Casland the difference between $2,383.30 and $2,395.30, amounting to $12, and aggregating $187.   So that plaintiffs' money paid $21,000 of the cash payments and the defendant's money paid $187, and McCasland and Miltenberger, who together had a one-third interest, paid nothing.   In fact, they never have paid anything; whatever was paid for their interest was paid by their assignees.

The plaintiffs' share of the cash payments was (in round numbers) $10,500 and the defendant's and McCasland and Miltenberger's share was $10,500. Instead of putting up his part and requiring McCasland and Miltenberger to put up their part of their $10,500, the defendant wrongfully used $10,500 of the $21,000 contributed by the plaintiffs and with it paid the $10,500 which he, McCasland and Miltenberger owed. It is true they three profited $3,500 each by the transaction. But it is wholly erroneous to say that under such circumstances the defendant should be liable only for $3,500, the profit to himself. And for this reason, the $10,500 paid for the share of himself, McCasland and Miltenberger, was trust funds in the defendant's hands belonging to the plaintiffs.

This being true, the defendant is responsible to the plaintiffs for the whole of it, and he can no more excuse himself by showing that he only got $3,500 profit out of it and the other $7,000 went to McCasland and Miltenberger, than he could excuse himself in toto if he had given the whole of it away or had squandered it. He misappropriated it and therefore he is liable for the whole of it, and it is immaterial how he spent it or who benefited by it. In equity he received it as trustee, and has not spent it for trust purposes, and, therefore, it is treated as if it was still in his hands and he can not be heard to say it is not.

It follows that the circuit court was in error in holding that the defendant was liable only for $3,500 and interest.

But this is not all of the case. The amount of cash the defendant was entitled to pay is the $13,616.70 paid to Denison and the $5,175 paid to Mrs. Beekin, aggregating $18,791.70. The half of this which the defendant was entitled to pay out of the $21,000 contributed by the plaintiffs is $9,395.85. The payment of $2,395.30 to McCasland was wholly unauthorized and improper. Deduct the $9,395.85 from the $21,000 and it leaves $11,604.15 as the balance of the trust funds in the defendant's hands belonging to the

plaintiffs, for which they are entitled to a judgment, and this is the exact amount the court entered a judgment for, and that result was manifestly reached in this way, and was the proper amount, with the exception that it did not include the one-half of the $8,400, the second mortgage to C. O. McCasland that the plaintiffs afterwards paid. The plaintiffs were entitled to recover this $4,200 in addition to the $11,604.15.

It was a fraud upon the plaintiffs for the defendant to use $2,395.30 of their money to pay McCasland and it was a like fraud for the defendant to put the second mortgage on the property for $8,400 to McCasland. For both sums represented a secret profit which McCasland, at least, if not the defendant also, was making out of the transaction, when he was a party to the purchase.

When McCasland went into the syndicate to buy the property from Denison, he lost all rights to profits under his original contract with Denison, so far as the plaintiffs and the other members of the syndicate were concerned. So when McCasland entered into the contract of October 15, 1892, with the defendant and Miltenberger, to form an inner syndicate and share the profits arising from a sale of the property for $72,000, he lost all rights to profit under his original agreement with Denison, so far as the plaintiffs were concerned. Such an arrangement was a fraud upon the plaintiffs. But he also ceased to have any rights under his original contract with Denison, when the new arrangement was made with Denison whereby Denison agreed to sell and did sell the property for $13,616.70, subject to the balance due Mrs. Beekin of $47,388. Therefore, it was a fraud upon the plaintiffs for the defendant to place the $8,400 mortgage on the property, one-half of which the plaintiffs paid. This half, amounting to $4,200 which the plaintiffs paid, as well as the $2,395.30 paid McCasland out of the plaintiffs' $21,000, is the secret and fraudulent profit that the inner syndicate made, or which McCasland made and the defendant permitted him to make, and

it was a breach of trust and a fraud whether the defendant shared in it with McCasland or not, and the defendant is liable to the plaintiffs for the loss they sustained thereby, which amounts to $4,200.

The judgment of the circuit court should have been for this $4,200 in addition to the $11,604.15 aggregating $15,804.15, with six per cent interest thereon.

It follows that the circuit court erred in sustaining the defendant's motion for a new trial and should have sustained the plaintiffs' motion for new trial.

For these reasons, the judgment of the circuit court in sustaining the defendant's motion for a new trial is reversed, and the cause remanded to that court with directions to set aside its orders sustaining the defendant's motion for a new trial, and overruling the plaintiffs' motion for new trial, to reinstate those motions on the docket, and to proceed thereafter in accordance herewith. All concur.