M’Girk, C. J.,
delivered the opinion of the Court.
This is an appeal from the Circuit Court in Chancery. The bill states that in the year 1828 West, the complainant, and Wayne, the respondent, with many others fitted themselves out with outfits of goods for the Santa Pe trade; that after they had left the jurisdiction of the State, somewhere on the Arkansas river, West wishing to return home,'sold his goods to the amount of $1,100 to Wayne ; that West refused to sell his goods to Wayne, unless he would give such security as West had given to those of whom he bought the goods, which security was a mortgage on land and negroes; whereupon Wayne told him that he possessed land and negroes in this State in the county of Boone; that the contract was then closed, and Wayne gave a mortgage 1o West to secure the payment of the money fora negro woman and several children and one quarter section of land, all in the county of Boone. The bill then avers that these representations of Wayne induced him to sell his goods as above stated; that West then started.baclchome;-that after having travelled some miles, he met a company of traders going to Santa Pe ; that he informed the company what he had done; that some of that company who knew Wayne, told him that he would lose his moneythat Wayne owned neither negroes nor land; that he, West,., was advised by some of the company that Wayne was in fact worth nothing, and he had better go hack and take his goods, or go on to Santa Fe and get his pay there. West, went hack and told Wayne what he had, been informed. Wayne did not deny, *14 the truth of the report. West then demanded his goods to be delivered ifp to him, alledging that a fraud had been practiced on him. Wayne refused to rescind thé contract, unless West would give him his note or bond for $100. West alledges that that transaction took place in a country where no civil law existed, and not having it in his power to redress himself otherwise than by force, and seeing the extreme probability of losing the money and goods, he did, to save himself from that loss,give to Wayne his bond for $100 for the consideration of getting the goods back again; and that he did then get his goods back again. He further alledges that he has been sued on the bond in a Court of Law, and that judgment has been rendered against him, and execution is threatened, &c. The bill prays that the judgment may be perpetually enjoined. Wayne answers the bill, and admits that on the Arkansas river he did buy the goods of the complainant to' the amount alledged, and that he then made his note for the payment of the sime to the complainant. He then denies that he ever gave the complainant any mortgage on any species of property by description either real or personal.- He says he admits the note he gave for the payment of the money for the goods, contained a clause by which he did acknowled his property generally to be bound for the payment of the money, and denieb positively that either land or negroes were named in the said instrument, and he says he never made any other writing save as above. The defendant admits that he may have represented to the complainant that he was the owner of some slaves or negroes, but he denies that he represented to him that he was the owner of any land at that time. He admits he oWned no land, and insists that he did then own some negroes, and does yet own some negroes; he denies the complainant ever charged him with being insolvent, and say's he was not insolvent then, nor is he yet insolvent. The defendant says he admits that on the next day after the purchase of the goods was made, the complainant became dissatisfied with the sale of the goods, and came back and requested him to rescind the contract and give up the goods, and that the defendant was unwilling to do so, unless the complainant would give him $100 for his contract and his trouble, which sum the complainant agreed to give, and gave the bond sued on to secure the payment of the money. Then the goods were delivered to the complainant. He asserts that he never used any means or acts to induce the complainant to sell the goods to him, other than as above set forth, and say's he made no declaration relating thereto, that was not strictly true. The complainant put in a replication and the cause was heard on the' bill and answer, and on the evidence which is in substance as follows: that the defendant owned no land nor negroes, except the one-half of a small negro boy. That otherwise he was worth little or nothing, at the time he bought the goods and made the instrument to secure the payment of the money, and that he had mortgaged a negro woman and children to one Lanme & Company for $600 worth of goods for his outfit on the trading expedition, and that these same negroes belonged to his mother at the time. Upon this evidence the Court heard the cause, dissolved the injunction, and dismissed the bill. The error assigned is a genal one. The ground relied on by the appellant to reverse the decree of dismissal, and to sustain the relief he asks for, is that the appellee acted oppressively toward him, and took undue advantage of the condition of the complainant in obtaining the bond for the- $100, and- that he committed a fraud in pretending he had sufficient substance to secure the payment of the price of the goods, when in fact he was worth little or nothing ; that Wayne committed a fraud in executing a mortgage of property which he did not own, whereby the complainant was deceived. The com *15 plainant’s right to relief is resisted on the ground that the bond was freely entered into without any duress or undue advantage used to obtain it; and, secondly, that if the complainant could have any relief, the defence should have been made at law, and the complainant having failed to do so, he is now too late. We will first examine the complainant’s right to relief, on the ground of undue advantage, hardship, oppression and fraud. Mr. Givins, for the complainant, has cited several authorities which do, in our opinion, sustain his ground for relief either in a Court of Law or Equity. The first to be examined is that of Irving v. Wilson, 4 T. R. 485. This was a case where a revenue officer seized goods unlawfully, and after the unlawful? ness was ascertained by him, he refused to deliver them up, unless the owner would pay him £2 11s. The Court held an action of assumpsit would lie to re.cover the money hack. A part of the reason given for the decision is, that although the party might have sued the revenue officer, yet he might want his goods, and was not bound to wait the tedious process of the law. It is laid down, in B. N. P. 132, thataper? son pawned plate, and when he came to redeem, the pawnbroker refused to give up the plate, unless the owner would give him £10 over and above the legal interest, which he refused, but said he would give £4. This was refused. He then paid the £10, took his goods, and it was held an action lay to recover it back, on the ground that the owner was not bound to wait till he could get the goods by law, as he might be in great need of them. See also to this point C. Johnson Ch. R. 210 and 1 Ray, R. 470. 2 Ray, 213. These cases show that even at law, in cases of hardship and extortion, the court will give the party relief, though he might have redressed himself by due course oflaw; but the party is not bound to resort to that course. It is the province of Courts of Chancery to relieve against fraud, deceit, hardship and oppression. Let us see if in this case there was any fraud, hardship or oppres? sion. The defendant bought of the complainant $1,100 worth of goods, representing himself to own property to a considerable value, sufficient to induce the complainant to .believe that a mortgage of that property to him would secure the payment of the money, when in truth this matter was totally untrue. The evidence is that he only-owned the one-half of a little negro boy, and otherwise was worth little or nothing, and besides that the very negroes he pretended to own were already mortgaged for a large sum of money, nearly equal to their value. Now if the negroes had been mortgaged, the suppression of that fact was fraudulent. When West sold his goods and took the mortgage, he had no means of ascertaining the truth of the representa? tions. He was far removed from the place where the property was, and Wayne having obtained the goods by fraud at first, he uses this advantage, so obtained by fraud, to keep the goods or to compel the complainant to submit to the risk of a total loss of the money, or to give the bond. And herein consists the oppression. This oppression, exercised in a country where no legal means of redress existed, growing out of a fraud, and a deep one too, of the defendant, will, in the opinion of this Court, form a clear claim to relief. We have examined the authorities of the defendant on this point, and cannot see that they have sufficient strength to enable him to resist the claim for relief. Mr. Davis, for the defendant, next contends that if there could be any relief, the defence should have been made at law, or in other words the defence might haye been made at law; and that opportunity being neglected, is totally lost. To sustain this point we are referred to the nature of the transaction, pnd it is said that duress of a man’s goods is no ground in law or equity to set asid® ,a bond; and also that a fraudulent act is cognizable in law, as well as in equity. *16 Now it is true that when the defence is purely legal, it must he made at law, and cannot he made in equity, unless the party can show a good excuse why he did not make it at law. It is believed hy the Court that where the transaction is founded in fraud, the relief is in both Courts, in some instances; but if the Court of Law does adjudicate the point, there is forever an end of the matter. Here no defence was made at law, and the party was not bound to make his defence there. This doctrine we think is supported by the current of authorities; but a part of this transaction was fraudulent and the balance oppressive, and it is by no m'lans clear that a Court of Law could, according to its mode of proceeding, give the‘ ? Jlief asked for; and in doubtful cases of this character, Courts of Chancery will entertain jurisdiction. The decree of the Circuit Court is reversed. The cause is sent back to the Circuit Court with directions to reinstate the cause, and to enjoin the judgment at Saw perpetually, and to proceed in conformity to this opinion. The complainant is allowed his costs in this Court.