## VAN RAALTE v. EPSTEIN, Appellant.

**Division Two, March 5, 1907.***

1. **PLEADING: Proof: Subsidiary Allegation.** It is sufficient if the substance of the issue is proved, even though some of the subsidiary allegations are not proved—provided, of course, that defendant is not misled by the form of the pleading.

2. **PRINCIPAL AND AGENT: Fraud: False Pretense: No Proof: Surplusage.** Allegations charging that plaintiff's agent had already made secret arrangements with a third person to purchase the plaintiff's property at a price far in excess of what plaintiff had finally been induced by his agent's false representations to offer the property for, that the agent caused his own agent to call on plaintiff and pretend to be the agent for the exchange of this agent's property for plaintiff's property, and concealed from him that it was the agent's property, may all fail for lack of proof, and yet the petition state a good cause of action for fraud. In this case those allegations may be omitted as surplusage, and yet the petition shows that the agent was unfaithful to his principal, and by concealments and double-dealing caused his principal to part with his property at less than its real value to the agent himself. [Distinguishing Huston v. Tyler, 140 Mo. 252.]

3. ———: ———: **Unfaithfulness.** An agent will not be allowed to put himself in a position antagonistic to his principal, or to speculate on the subject of the agency. A failure of the agent to keep good faith with the principal is a fraud.

4. ———: ———: **Confidential Relation.** Trustees, agents, administrators, guardians, attorneys and others whose connection with any person is such as to establish a confidential relation

---

*Note.—Decided December 22, 1906. Motion for rehearing filed. Motion overruled March 5, 1907.

between them concerning such person's property, or to give them special knowledge or opportunities in regard to it, cannot, without and often with, his full knowledge and consent, become the purchaser of such property.

5. ———: ———: **Secret Purchase of Property: Concealment.** An agent who, through the medium of "straw" men and an undisclosed agent of his own, and by concealment of the fact that he is the owner of certain property, induces his principal to take that property in exchange for his own property, without knowledge that the agent thereby becomes the owner of the principal's property, and who soon thereafter sells the property so acquired at much more than the principal was led by the agent to believe the purchaser would give, is guilty of perpetrating a fraud upon his principal, and may be made to respond in damages to the principal for the difference between the amount in value of the property the principal received in the exchange and the amount for which the agent subsequently sold his principal's property.

6. ———: ———: **Trial by Jury: Innocent Purchaser: Damages.** Where the petition prays for a money judgment alone, and no other relief is asked or is possible, the issue, though founded on the fraud of an agent, is triable by a jury. In this case, the agent by concealment and misstatements had acquired his principal's property, and sold and conveyed it to an innocent purchaser, and the principal sues the agent for the difference between the amount he received for the property and what the agent sold it for, and it is *held* that the plaintiff was entitled to a jury.

7. ———: ———: ———: ———: ———: **Equity.** Jurisdiction of courts of law to grant relief by way of damages growing out of fraudulent transactions is a very ancient one, and where full and adequate relief may be administered in a court of law by an award of damages on account of fraud, the injured party may bring his action in a court of law. Besides, the statute says that "an issue of fact in an action for the recovery of money alone . . . must be tried by a jury;" and where the perpetrator of the fraud has transferred to an innocent purchaser the property by him fraudulently acquired, the injured party has no redress except in an action for damages.

8. ———: **Commissions.** An agent who has been guilty of fraud in the transaction of his principal's business, forfeits the commissions paid by him to others who acted for him in consummating the transaction.

9. ———: **Amount of Damages.** The agent is responsible to his principal for the loss or damage the principal suffered by reason of his fraudulent and unfaithful conduct in the trans-

Van Raalte v. Epstein.

action of the business, whether he reaped the benefits alone or shared them with others who aided him to perpetrate the fraud.

Transferred from St. Louis Court of Appeals.

AFFIRMED.

*Bond, Marshall & Bond* for appellant.

(1)  If there is no substantial evidence of any fact which is essential to plaintiff's right to recover, a judgment in his favor must be reversed.  Hewitt v. Steele, 136 Mo. 335; Long v. Moon, 107 Mo. 339; Moore v. Hutchinson, 69 Mo. 430; Groll v. Tower, 85 Mo. 253; Bartley v. Railroad, 148 Mo. 141.  (2)  Mere conjectures, speculations, surmises or suspicions do not constitute a legal basis for a finding of facts or the verdict of a jury.  Peck v. Railroad, 31 Mo. App. 126; Glick v. Railroad, 57 Mo. App. 104; Erhart v. Dietrick, 118 Mo. 427.  (3)  Plaintiff cannot sue on one cause of action and recover upon another.  Huston v. Tyler, 140 Mo. 264; Haynes v. Town of Trenton, 108 Mo. 132; Christian v. Ins. Co., 143 Mo. 469; Cole v. Armour, 154 Mo. 351; Newham v. Kentin, 79 Mo. 382; Harris v. Railroad, 37 Mo. 307.  (4)  There is no evidence in the record tending to show the existence of any agency between  plaintiff  and defendant in connection with the sale to Harris.  (5)  Dealings between principal and agent are not prohibited.  Such transactions are perfectly valid, if free from fraud, the only difference being that the burden is on the agent to establish the good faith of the transaction, whereas, in other cases, he who alleges fraud must prove it.  State ex rel. v. Jones, 131 Mo. 210.  (6)  The opinion of the Court of Appeals rendered in this cause is in direct conflict with numerous decisions of this court.  Particularly the following: Huston v. Tyler, 140 Mo. 264; Cole v. Armour, 154 Mo. 351; Haynes v. Town of Trenton, 108

Mo. 132; Christian v. Ins. Co., 143 Mo. 469; Newham v. Kentin, 79 Mo. 382; Harris v. Railroad, 37 Mo. 307; Glick v. Railroad, 57 Mo. App. 104; Hewitt v. Steele, 136 Mo. 335; State ex rel. v. Jones, 131 Mo. 210. (7) The court erred in its action in submitting this case to a jury and in refusing to try the issue herein as chancellor, because: (a) The petition in this case is peculiarly a bill in equity. It is based upon a trust; its object and purpose is to create a trust in plaintiff's favor, to have the defendant found to be a trustee for plaintiff and to force him to account to plaintiff for profits made by him whilst acting in a fiduciary capacity as plaintiff's agent. Grumley v. Webb, 44 Mo. 450; Hunter v. Hunter, 50 Mo. 445; Smith v. Tyler, 57 Mo. App. 672; Bent v. Priest, 86 Mo. 482; Hunter v. Whitehead, 42 Mo. 524; Ridgway v. Herbert, 150 Mo. 606; Jones v. Henderson, 149 Mo. 403. (b) Such cases are in the exclusive jurisdiction of courts of equity. Bispham's Eq. (6 Ed.), pp. 32 and 143-144; 1 Perry on Trusts (5 Ed.), 17; 27 Am. and Eng. Ency. Law, 271; 2 Pom. Eq. Juris. (2 Ed.), pp. 872, 911, 910 and 920; Kerr on Fraud and Mistake (Bump's Ed.), p. 324. (c) Being a case of equitable cognizance, it was properly triable by the court and not by a jury. Long v. Long, 141 Mo. 371; Brim v. Fleming, 135 Mo. 604; Ridgway v. Herbert, 150 Mo. 606; Kemp v. Foster, 22 Mo. App. 643. (8) If plaintiff could recover under the petition and evidence (which we deny) then the damages are grossly excessive, because: (a) Under the instructions of the court, the jury rendered a verdict against defendant for the gross profits made on the deal in selling the La Salle street property. The testimony shows that he received only one-half of the net profits. He was liable, if at all, only for what he actually received. Hunter v. Hunter, 50 Mo. 445; Bent v. Priest, 86 Mo. 476. (b) In any event, defendant was entitled to be credited with the commissions on the sale paid to Aiple & Hemmelmann and all the

cash outlays and expenses connected with the sale. Hunter v. Hunter, supra; Grumley v. Webb, 44 Mo. 455; Jacques v. Edgell, 40 Mo. 76; Murdock v. Wilson, 84 Mo. 96; 2 Pom. Eq. Jur. (2 Ed.), p. 910. (9) The court's instructions, given to the jury at plaintiff's instance, are erroneous. And they are inconsistent with the only instruction given in behalf of defendant and with the issues raised by the pleadings.

*Collins & Chappell* and *Joseph S. Laurie* for respondent.

(1) The question as to whether or not the issues of fact in this case were properly submitted to a jury for determination is settled by express statutory enactment. R. S. 1899, sec. 691. The petition in this case prays for a money judgment only; no other relief was asked or was possible. As the La Salle street house had been sold and was then owned by an innocent purchaser, it was only possible for Van Raalte to demand and recover that which he had lost in value or money by the fraudulent acts of Epstein. It was, therefore, an issue of fact for the recovery of money only, and, in the language of the statute, "must be tried by a jury." Ragan v. McCoy, 29 Mo. 356; Ellis v. Kreutzinger, 31 Mo. 432; Smith v. Harris, 42 Mo. 557; Major's Heirs v. Rice, 57 Mo. 384; Hamilton v. Hamilton, 59 Mo. 233; Kitchen v. Railroad, 59 Mo. 514; Thomas v. Railroad, 109 Mo. 187; Benoist v. Thomas, 121 Mo. 660; Smith v. Canning Co., 14 Mo. App. 522; Donovan v. Barnett, 27 Mo. App. 460; Routt v. Milner, 57 Mo. App. 50. It is apparent that the statute in express terms, and as interpreted by the appellate courts of this State, provides that issues of fact, in all actions for the recovery of money only, must be tried by a jury, unless a jury trial is waived by both parties or a reference be ordered. (2) Appellant con-

tends that the essential facts constituting plaintiff's cause of action, as set forth in the petition, were wholly unsupported by evidence. The ground of this contention is that the petition alleges that, at the time the contract for the sale of the La Salle street house was entered into with Harris, defendant had already made an arrangement with Dr. Tomlin for the purchase by Tomlin of said property at a price greatly in excess of the $4,500 received by Van Raalte, and that there was no evidence whatever tending to show any such pre-arrangement by defendant with Dr. Tomlin. It is true that the petition does contain such allegation, but it is not true that such allegation constituted the basis of plaintiff's right of recovery, or that the same was essential to plaintiff's cause of action. Neither was plaintiff's recovery predicated upon the truthfulness of said allegation. It was not necessary to plaintiff's cause of action, as set forth in the petition, that any such pre-arrangement should have been alleged, and it was wholly immaterial to plaintiff's right of recovery whether, in fact, the pre-arrangement alleged existed or not. (3) The jury returned a verdict in favor of plaintiff in the sum of $1,350, which is the difference between the amount that Van Raalte received in the transaction for his La Salle street house and the price for which the plaintiff sold said house to Dr. Tomlin. Appellant contends that this is excessive, for the reason that plaintiff only received, as he claims, one-half of the profit of the sale to Dr. Tomlin, and for the further reason that the commissions paid Aiple & Hemmelmann for the sale of said property, and certain other expenses incident to the transfer of title, were not taken into consideration. The point thus made by appellant was vigorously urged before the Court of Appeals upon both hearings of this cause, and was in each instance overruled by said court, which appears from the opinions of BARCLAY, J., and REYBURN, J., in said case, to which

we refer the court.    We also cite the following
cases in support of our contention:  Davis v. Hoffman,
167 Mo. 573; Smith v. Boyd, 87 Mo. App. 647; Mayor,
Etc., v. Lever, 25 Q. B. D. 363, 1 Q. B. S. R. 173; Chan-
dler v. Bacon, 30 Fed. 538; Getty v. Devlin, 70 N. Y.
504; Euneau v. Rieger, 105 Mo. 659.  It seems that in
the case at bar defendant is not claiming compensation,
but reimbursement.  It is well settled that an agent is
not entitled to reimbursement for any expenditures or
outlays incurred by him in consequence of his own
breach of duty.  Tiffany, Agency, sec. 118.  The peti-
tion prays for judgment in the sum of $1,350, that be-
ing the amount, as alleged by the petition, which was
received by Epstein for the La Salle street house over
and above the price which plaintiff received for said
property.  The answer is a general denial.  If defend-
ant wished to reduce this claim by reason of any sum
due him as compensation or reimbursement he should
have pleaded the same by way of a counterclaim, and
having failed to do so, he cannot put the lower court
in error for not recognizing such claims in the instruc-
tions submitted to the jury.   (4)  It was immaterial, so
far as concerns plaintiff's right of recovery, whether
or not the pre-arrangement between Epstein and Tom-
lin, as alleged, existed.  The matters complained of
as having been assumed by the court in the instruction
to be true, are, on the contrary, fairly and squarely
submitted by the instruction to the jury for determina-
tion.   (5)  It is well settled by numerous decisions of
this court that where it appears from the whole record
that the verdict is manifestly for the right party, the
judgment will not be reversed for errors of the lower
court in giving or refusing instructions.  Burns v. Lib-
erty, 131 Mo. 372; King v. Ring, 155 Mo. 406; Moore
v. Railroad, 176 Mo. 528.

GANTT, J.—This is an action to recover $1,350,
on the ground of an alleged fraud.  It was brought to

the February term, 1900, of the circuit court of the
city of St. Louis. At the February term, 1901, the
cause was tried before the court and a jury, and re-
sulted in a verdict for the plaintiff for $1,350. After
unsuccessfully moving for a new trial and in arrest,
the defendant appealed to the St. Louis Court of Ap-
peals, and that court at the October term, 1902, af-
firmed the judgment. A rehearing was granted and
the cause reargued in that court and on April 14, 1903,
the Court of Appeals again affirmed the judgment of
the circuit court. Motions for a rehearing and to
transfer the cause to this court were heard and over-
ruled at the October term, 1903, but afterwards and
during the said term, one of the judges of said court
having become satisfied that the decisions of the Court
of Appeals was opposed to prior decisions of this
court it was ordered that the cause be certified to this
court for determination. Owing to the unfortunate
form in which the dissenting opinion was framed we
ordered the cause remanded to the Court of Appeals,
but upon a further consideration of the whole record
we were convinced that the order to transfer was based
upon a misapprehension of the record. Accordingly
the order to transfer was set aside, and the cause taken
as submitted upon the argument of counsel and briefs
filed on both sides.

Inasmuch as the ground for certifying the cause to
this court is, that the plaintiff was permitted to re-
cover upon a cause of action different from that al-
leged in the petition, and wholly failed to sustain the
cause of action stated in the petition, we deem it best
to set forth the petition in full:

"Simon Van Raalte, plaintiff herein, for cause of
action against Jacob I. Epstein, defendant herein,
states:

"That the defendant, at the time hereinafter men-
tioned, and for a long time prior thereto has been en-
gaged in the business of real estate and financial agent

in the city of St. Louis and State of Missouri, and as such was engaged in the buying and selling of real estate and collecting the rents of real estate for other persons as his clients. Plaintiff further states that for a long time prior to the month of September, 1898, he has been a client or customer of the defendant, and as such has repeatedly entrusted the defendant with the care and management of his, the plaintiff's real estate, and the sale thereof, and of the collection of the rents therefrom. Plaintiff further states that on or about the 13th day of September, 1898, he became, and until the time hereinafter mentioned was, the owner of certain real estate in the city of St. Louis, Missouri, described as a lot in block 2221 in said city of St. Louis, fronting thirty-five feet on the north side of La Salle street by a depth of one hundred and twenty feet to an alley, bounded north by property now or formerly of Harriet Pullis, and east by property now or formerly of Albert P. Hartman, and being all of lot sixteen, the east five feet of lot fifteen and the west five feet of lot seventeen, in block two of Armstrong's subdivision of said city, on which real estate was erected the dwelling house known as No. 1821 La Salle street. The plaintiff, by reason of his previous dealings with and the business standing of the defendant in the community, having confidence in the defendant's honesty and ability, as soon as he had purchased the above-described house and lot, placed the same in the hands of the defendant, as his agent, for the purpose of renting, and, as soon as possible, of selling the same.

"That on or about the —— day of ——, 1898, the defendant, while acting as the agent of plaintiff, rented the said house and lot to one Dr. Benjamin J. Tomlin as his residence, and at the time of said rental the defendant informed the plaintiff that said Tomlin was a prospective purchaser of the said house and lot, and that he, the defendant, felt quite certain that he

would be able to sell said house and lot to the said Tomlin; that plaintiff thereupon fixed the price of five thousand dollars upon the said house and lot, and authorized, requested and directed the defendant, as the agent of plaintiff, to price said house and lot to said Tomlin and to endeavor to sell the same to him at said price and sum of five thousand dollars. The defendant afterwards informed plaintiff that said Tomlin was not as yet ready to purchase said house and lot, whereupon the plaintiff informed the defendant that he, the plaintiff, was very anxious to sell the said house and lot to said Tomlin and authorized, requested and instructed the defendant, as the agent of the plaintiff, to sell the said house to the said Tomlin and to endeavor to sell the same to him at the price and sum of forty-five hundred dollars. That the defendant reported to the plaintiff that the said Tomlin was not yet ready to purchase said house and lot, and that he, the defendant, could not sell the same to said Tomlin at said sum of forty-five hundred dollars. That the defendant, in violation of his duties and obligations as the confidential and trusted agent of the plaintiff, while well knowing that said Tomlin desired to purchase said lot and house, and well knowing that said Tomlin valued the same at and was willing to pay more than five thousand dollars for the same, for the purpose of deceiving plaintiff, and acquiring an advantage over him, through and by means of confidential relations which existed beteen them, failed to offer and price said house and lot to said Tomlin at either said sum of five thousand dollars or at said sum of forty-five hundred dollars, and falsely reported to the plaintiff that he, the defendant, was unable to sell said house and lot to Tomlin, for either of said sums, and plaintiff, reposing entire trust and confidence in the defendant, believed and relied upon said false representations; that afterwards, and in the month of October, 1898, the defendant, knowing that the plaintiff was relying

on said false representations, and that the plaintiff believed that said house and lot could not be by defendant sold to said Tomlin for said sum of forty-five hundred dollars, caused one Ellis Harris, who was then engaged in business as a real estate broker in said city of St. Louis, and who had desk-room in the office of the defendant, to call upon the plaintiff and to pretend to be the agent for the sale or exchange of a certain piece of real estate in the city of St. Louis, Missouri, described as the east ten feet of lot sixteen and all of lot seventeen in city block 4847 of said city of St. Louis, having a total frontage of sixty feet on the south line of Fairmount avenue, by a depth southwardly of one hundred and eighty-five feet, more or less, to an alley fifteen feet wide. That at this time, the title of record to said Fairmount avenue property stood in the name of Lewis H. James; that plaintiff alleges that in truth and fact the said Lewis H. James held the title to said Fairmount avenue property in secret trust for the defendant, which fact was then unknown to the plaintiff and that the defendant and the said Harris concealed said fact from the plaintiff. That said Harris, acting for and at the request of the defendant, offered the plaintiff to exchange said Fairmount avenue property, subject to a deed of trust thereon, for the sum of fifteen hundred dollars, together with the sum of thirty-five hundred dollars in cash, for plaintiff's said property on La Salle street; that in said exchange said Fairmount avenue property was by said Harris and the plaintiff valued at the sum of twenty-four hundred dollars, making the equity therein subject to said deed of trust worth nine hundred dollars, and making the total consideration to be paid for plaintiff's said property the sum of forty-four hundred dollars; that plaintiff, relying upon the representations theretofore made to him by defendant, and not knowing that the defendant was the owner of or interested in said Fairmount avenue property, and not

knowing that said Harris was acting at the request and instance of the defendant, and not knowing that the defendant had already made arrangements and contracted with the said Tomlin to purchase the La Salle street house on or about October 18, 1899, agreed with said Harris to make said exchange, and accordingly, in pursuance with said agreement, and on or about the 20th day of October, 1999, accepted a deed of said date from said Lewis H. James, conveying to plaintiff the said Fairmount avenue property, subject to a deed of trust for the sum of fifteen hundred dollars, and the sum of thirty-five hundred dollars, which sum of thirty-five hundred dollars was then unknown to plaintiff, paid by the defendant, and at the request of said Harris, who was acting at the instance and request of and for defendant, conveyed his, plaintiff's said La Salle street property to one Augustus M. Wood, by deed also of said date. That said Wood, although said La Salle street property was conveyed to him by plaintiff in fee, held the same in secret trust for the defendant, and that said Wood did not pay any portion of the consideration for said La Salle street property, but that the only consideration paid to plaintiff for said La Salle street property was the conveyance of said Fairmount avenue property, valued as aforesaid, subject to said deed of trust for fifteen hundred dollars and said sum of thirty-five hundred dollars, all of which was paid by the defendant, although the fact that the same was paid by the defendant was then unknown to the plaintiff. That the purpose, desire and intent of the defendant in causing and procuring the plaintiff to exchange his, plaintiff's La Salle street property for said Fairmount avenue property was that the defendant might be able to sell plaintiff's said La Salle street property to said Tomlin at a sum far in excess of said sum of forty-five hundred dollars, and by concealing this the defendant's connection with the matter to en-

able him to collect, receive and appropriate to his own use, without accounting for same to plaintiff, the difference between the amount received by plaintiff for the said La Salle street property, and the amount which he, the defendant, might be able to induce said Tomlin to pay for same.

"That on the 20th day of November, 1899, the defendant in pursuance of his said plan and scheme to defraud the plaintiff, induced said Tomlin to purchase said La Salle street property and to pay therefor the sum of five thousand, seven hundred and fifty dollars, and caused and procured said Augustus M. Wood on said 20th day of November, 1899, to convey said La Salle street property to said Dr. Tomlin, but that the consideration therefor was paid to and received by the defendant. Wherefore, plaintiff says that the defendant has received and has the sum of thirteen hundred and fifty dollars, which in equity, and in good conscience and of right belongs to the plaintiff, and for which the defendant should account to the plaintiff. Plaintiff further states that he did not know, and the defendant concealed from him, the fact that said Wood held the title to said La Salle street property in trust for the defendant. Wherefore, plaintiff prays judgment against the defendant for said sum of thirteen hundred and fifty dollars, together with interest and cost of suit."

Defendant's answer was a general denial.

"Plaintiff and defendant had been intimate for many years; defendant for about eight years had been in the real estate business in St. Louis, and during that time had acted as agent of plaintiff, buying and selling property for him and negotiating loans for him, and enjoyed his full confidence. In September, 1898, plaintiff acquired a house known as No. 1821 La Salle street in the city of St. Louis, and being desirous of its disposal placed it in charge of defendant for rent and sale and fixed the price at $5,500. In February, 1899,

Epstein rented the house to B. F. Tomlin at $35.00 per month and so informed Van Raalte, and then told him that he was going to sell the house to the tenant. Plaintiff advised defendant of his impatience to sell the house and instructed him to price it to Tomlin at $5,-000. In his anxiety to sell the house plaintiff frequently called upon defendant and inquired how matters were progressing, but was always informed that Tomlin was not yet ready to buy. At length plaintiff instructed defendant to price the house at $4,500, but was again informed that Tomlin was not ready to buy. In the efforts Epstein asserted he made to sell to Tomlin he concedes that he at no time named a price or informed him of the reductions in price authorized by Van Raalte. In October, 1899, Ellis Harris, a real estate broker with headquarters in Epstein's office, called upon Van Raalte and offered several pieces of property in exchange for the La Salle street house, including a lot on Fairmount avenue. Thereupon Van Raalte visited Epstein to obtain the latter's judgment upon the value of the properties offered by Harris. Epstein, who then resided on Fairmount avenue, claimed that at this interview he refused to fix a value on the Fairmount avenue property, assigning as a reason that he was prejudiced, as he owned an interest therein. Van Raalte declared that Epstein did not inform him that he was a co-owner of the Fairmount property, and charges that after executing the preliminary agreement with Harris, in seeking from one Levy, a former partner of Epstein, an estimate upon the Fairmount property, Levy referred him to Epstein as its owner, which statement of Levy, Epstein pronounced false, repeating to Van Raalte that one Lewis James owned the property; Epstein, denying any such later conversation, also asserted that at the above visit he replied to Van Raalte's inquiry that James, in whose name the title to the Fairmount lot actually appeared of record, was, in the parlance of

real estate dealers, 'a straw man,' that is, a mere conduit or medium for convenience in holding and passing title. Whatever may be the truth in this regard, Van Raalte entered into a contract with Harris, the latter designating himself therein as agent, by which he agreed to exchange his La Salle street property for the Fairmount avenue lot, subject to a deed of trust for $1,500, and $3,500 in cash, the La Salle street lot being appraised for the purpose of the exchange at $4,400 and the equity in the Fairmount avenue lot at $1,100, Van Raalte, by the terms of the agreement, paying no commissions, and receiving Epstein's check for $50.00 to bind the bargain.

"The legal title of record to the Fairmount avenue lot stood in the name of Lewis James, a negro porter in the musical conservatory of which Epstein's brother was co-proprietor. In consummation of the transaction, on October 23rd, Van Raalte conveyed his La Salle street house as requested to Augustus M. Wood, also a 'straw man,' for an expressed consideration of $6,500. Without Van Raalte's knowledge Wood had executed to Theodore Hemmelmann, Jr., as trustee for W. H. Bush, a deed of trust for $3,500 on the La Salle street house, and the money thus procured was paid to Epstein and by him delivered to Van Raalte, together with a conveyance from Lewis James to Van Raalte on the Fairmount avenue property, subject to the existing deed of trust for $1,500. On November 20, 1899, Epstein sold the La Salle street house to Tomlin for $5,750. Epstein further testified that the Fairmount avenue lot was owned jointly by himself and Harris, with the right accorded the latter to purchase the whole at a fixed rate, and that he, Epstein, had accepted a half interest in the La Salle street house in lieu of the like interest in the Fairmount avenue lot, and title to the La Salle street house was taken in the name of Wood for the joint benefit of himself and Harris and the differ-

ence between $5,750, the selling price to Tomlin, and
$3,500, the amount of the mortgage indebtedness, viz.,
$2,250, was received by Epstein in cash and notes se-
cured by deed of trust and divided between himself and
Harris. Except as heretofore stated Epstein at no time
disclosed any of these facts to Van Raalte. In his of-
ficial capacity as notary, Epstein took the acknowledg-
ments of all grantors in the conveyances employed both
in the transfers of title under the contract of exchange
and the sale to Tomlin, necessitating the execution of
a deed from Van Raalte and wife to Wood, a deed of
trust from Wood by which the sum of $3,500 was secur-
ed, a deed from James to Van Raalte, a deed from
Wood to Tomlin, and the acknowledgments of Tomlin
and wife to the second deed of trust securing part of
the purchase money of the La Salle street property."

In the above statement we have availed ourselves
of the very admirable summary of the testimony which
appears in the opinion of Judge REYBURN in the St.
Louis Court of Appeals.

I.    The proposition which the counsel for the de-
fendant urges at great length is that the essential alle-
gation in the plaintiff's petition is that defendant "hav-
ing then made arrangements with said Tomlin to pur-
chase the same at a price and sum far in excess of said
sum of $4,500, caused one Ellis Harris to call upon
plaintiff and to pretend to be the agent for the sale or
exchange of the Fairmount avenue property for plain-
tiff's La Salle street property," and "not knowing the
defendant had already made arrangements and con-
tracted with the said Tomlin to purchase said La Salle
street house on or about October 18, 1899, agreed with
said Harris to make said exchange."    And that because
this allegation in the petition was not sustained by
proof, there was no substantial evidence to support the
plaintiff's cause of action and the judgment should be
reversed without a remanding.    It is true that the pe-

tition does contain the said allegations, but upon a careful consideration of the whole petition, in our opinion it was not the basis of plaintiff's right to recover, nor that those allegations were essential to plaintiff's cause of action.   Both of these statements in the petition may be eliminated therefrom and there will still remain allegations that plaintiff was the owner of the La Salle street house and that defendant became his agent for the sale of the said premises; that the defendant represented to plaintiff that he would be able to sell the house to Dr. Tomlin, and that thereupon plaintiff fixed the price of said house at $5,000, and directed the defendant to offer the same to Dr. Tomlin for that price; that defendant reported to plaintiff that Dr. Tomlin was not yet ready to purchase, and that thereupon plaintiff reduced the price to $4,500, and directed the defendant to offer the house to Tomlin at that price; that thereupon defendant again reported to plaintiff that Tomlin was not ready to buy, and he could not sell the house to Tomlin for $4,500; that defendant in violation of his duty and obligation as agent failed to offer said house to Tomlin at either the sum of $5,000 or $4,500, and falsely reported to plaintiff that he was unable to sell the house to Tomlin for either of the said sums; that afterwards in October, 1898, the defendant knowing that plaintiff was relying upon his representations that the house could not be sold to Tomlin for $4,500, and knowing plaintiff's great desire to sell the house, caused one Ellis Harris, a real estate broker, with desk room in his office, to call upon plaintiff and pretend to be the agent for the sale or exchange of a lot on Fairmount avenue standing in the name of Lewis H. James; that unknown to plaintiff said James held the title to said lot in secret trust for the defendant, which fact the defendant concealed from plaintiff; that Harris acting for and at the request of defendant, offered to exchange said Fairmount avenue lot, subject to a deed of trust

thereon for a sum of $1,500, together with $3,500 in cash, for plaintiff's said property on La Salle street, making the total consideration to be paid for plaintiff's said property the sum of $4,400; that plaintiff relying upon the representations theretofore made to him by defendant and not knowing that defendant was the owner of or interested in said Fairmount avenue property, agreed with said Harris to make said exchange and in pursuance of said agreement on October 20, 1899, accepted the deed from said James, conveying to plaintiff said Fairmount avenue lot, and the sum of $3,500, which sum then unknown to plaintiff, was paid by the defendant, and at the request of Harris, who was acting at the instance of defendant, the plaintiff conveyed his La Salle street property to one Augustus N. Wood by deed of that date; that said Wood paid no portion of the consideration for said property, but held the same in secret trust for the defendant and Harris; that the only consideration received for his property was the Fairmount avenue lot subject to the deed of trust and the sum of $3,500, all of which was paid by the defendant, but the fact that the same was paid by defendant was unknown to plaintiff; that the desire and the intent of the defendant in procuring plaintiff to exchange his La Salle street property for said Fairmount avenue lot was that the defendant might be able to sell the same to said Dr. Tomlin at a sum far in excess of $4,500, and by concealing his connection with the matter to enable him to appropriate without accounting to plaintiff the difference between the amount received by plaintiff and the sum which defendant might be able to induce said Tomlin to pay for the same; that on the 20th of November, 1899, the defendant in pursuit of his scheme to defraud plaintiff, induced Tomlin to purchase the La Salle street property for the sum of $5,750, and procured said Wood on the same day to convey said property to said Tomlin,

but that the consideration was paid to and received by the defendant; that plaintiff did not know, and defendant concealed from him the fact, that said Wood held the title of said La Salle street property in trust for the defendant. Wherefore, plaintiff says the defendant has received $1,350, which in equity and good conscience belongs to plaintiff, and plaintiff prays judgment against defendant for said sum with interest and cost.

So that, without the two allegations as to a prearrangement between defendant and Dr. Tomlin for the sale of the La Salle street lot, there remain ample averments in the petition charging the defendant with a breach of his duty to plaintiff in failing to exercise reasonable diligence to carry out his instructions from the plaintiff for the sale of the La Salle street property and then, by concealing the truth from the plaintiff as to defendant's relation to the Fairmount avenue property, manipulating a scheme whereby he acquired plaintiff's La Salle street property at less than its real value. ''The paramount and vital principle of all agencies is good faith, for without it the relation of principal and agent could not well exist. So sedulously is this principle guarded that all departures from it are esteemed frauds upon the confidence bestowed. An agent therefore will not be allowed to put himself in a position antagonistic to his principal, or speculate in the subject of the agency.'' [1 Am. and Eng. Ency. Law (2 Ed.), 1071.]

In Barthelmew v. Leech, 7 Watts 472, it was held that an agent having charge of wild lands, could not become a purchaser thereof at a sale for taxes without a previous and explicit renunciation of his agency. In that case, C. J. GIBSON observed: ''The most open, ingenuous and disinterested dealing is required of a confidential agent while he consents to act as such; and there must be an unambiguous relinquishment of his agency before he can acquire an interest in the subject

of it. To leave a doubt of his position in this respect is to turn himself into a trustee. It is unnecessary to recur to authority for a principle so familiar, and so accordant with common honesty.''

The doctrine that trustees, agents, administrators, guardians, attorneys or others whose connection with any person is such as to establish a confidential relation between 'them concerning his property or give them special knowledge or opportunities in regard to it, cannot without, and often with, his full knowledge and consent, become the purchaser of such property, is well settled in the jurisprudence of England and the United State, and is affirmatively established as the settled law of this State. [Thornton v. Irwin, 43 Mo. l. c. 163; Boardman v. Florez, 37 Mo. 562.]

In the leading case of Fox v. Mackreth, 2 Bro. C. C. 400, Lord Chancellor THURLOW said: ''If a trustee, though strictly honest, buys an estate himself, and then sells it for more, according to the rules of a court of equity from general policy, and not from any peculiar imputation of fraud, he should not be permitted to sell to himself, but should remain a trustee for all intents and purposes.'' In that case having sold the property at a higher advanced price he was decreed a trustee as to the sums produced at the second sale, for the original vendor. [Marshall v. Ferguson, 94 Mo. App. 175; Palmer v. Pirson, 24 N. Y. Supp. 333.] The gist of the action at law for such a fraud is the fraudulent producing of a false impression upon the mind of the principal by the agent, and if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the principal. [Stewart v. Wyoming Ranche Co., 128 U. S. l. c. 388.]

That the petition in this case stated a cause of action within the foregoing principles governing the rela-

tions of principal and agent without the two allegations in regard to prearrangement between the defendant and Dr. Tomlin, we have no doubt whatever, nor that the evidence was sufficient to justify the jury in finding the facts as stated in the petition, even though the plaintiff failed to prove the prearrangement between the defendant and Dr. Tomlin. It is a well-established rule of practice at common law that it is sufficient if the substance of the issue is proved, even though some of the subsidiary allegations are not established. Provided, of course, that defendant is not misled by the form of the pleading.

This brings us to the contention of the defendant that the decision in the Court of Appeals was in conflict with Huston v. Tyler, 140 Mo. 252, and other similar cases of similar import, by this court. But an examination of Huston v. Tyler will show that in that case the petition counted upon a specific contract on the part of the defendant to procure a note signed by four persons, and it was held in that case that plaintiff having declared upon an express contract or warranty as to the genuineness of certain signatures, he was thereby precluded from relying on an implied warranty to the same effect, and that the allegation as to the express warranty was not mere matter of inducement but constituted the gravamen of plaintiff's action, and there being no proof of it, therefore, he was not entitled to recover in that case. In this case the allegation as to the prearrangement of defendant with Tomlin may be disregarded as surplusage and still a good and sufficient cause of action remains specifically alleged, which was not the case in Huston v. Tyler. We find no conflict whatever in either of the decisions of the Court of Appeals in this case with what was said in Huston v. Tyler, or in any other of the authorities relied upon by the defendant. It must follow, there-

fore, that the contention of counsel that, because the plaintiff did not establish the single allegation of the prearrangement with Dr. Tomlin, there was a total failure to prove the essential allegation of the petition, is not tenable. In this case the court did not permit the plaintiff to recover upon a cause of action not alleged, or upon a different and distinct cause of action, but upon a complete cause of action stated and upon proofs sustaining that cause.

II. It is next insisted that there was no evidence tending to show that the defendant was the agent of the plaintiff at the time of the sale to Harris. Without recapitulating the testimony upon this point, it must suffice to say that in our opinion there was abundant evidence that the defendant had become the agent of plaintiff for the sale of his La Salle street property in February, 1899, and that such agency continued and had not been terminated by the plaintiff up to the date of the consummation of the trade; and that there had never been an unambiguous relinquishment of his agency by the defendant with that full and candid disclosure of defendant's relation to the Fairmount avenue property, which through "straw men" he was unloading on plaintiff in exchange for plaintiff's lot. Nor does it change the rights of the plaintiff that there was some evidence tending to prove that plaintiff was acting in his own behalf in the trade with Harris when all the evidence of concealment of defendant's connection and ownership of the Fairmout avenue property is taken into consideration, and of Harris's relation to the defendant. These were questions of fact for the jury under the instructions of the court.

III. It was urged in the Court of Appeals and the insistence is renewed in this court that the facts stated made this a suit in equity, triable before a chancellor alone, and the plaintiff was not entitled to a jury and that the court erred in submitting the

cause to a jury. By section 691, Revised Statutes 1899, it is provided: "An issue of fact in an action for the recovery of money only, or of specific real or personal property, must be tried by a jury, unless a jury trial be waived or a reference ordered as hereinafter provided." The petition in this case prays for a money judgment only; no other relief was asked or was possible. The La Salle street house had been sold to an innocent purchaser, and the petition demanded the amount of money which the plaintiff had lost by the fraudulent acts of the defendant. The fraud alleged was an active one.

It has been often stated by the courts of this country that in cases arising out of fraud, the courts of law and equity have concurrent jurisdiction. Courts of equity by reason of their more extensive powers may and frequently do adjudicate matters of fraud, which courts of law are incompetent to try, and to that extent, at least, may, be said to exercise an exclusive jurisdiction, but the jurisdiction of courts of law to grant relief by way of damages growing out of fraudulent transactions, is a very ancient one, and where full and adequate relief may be administered in a court of law on account of fraud, the injured party may bring his action in a court of law. This has been the rule in this State since the case of West v. Wayne, 3 Mo. 16; Mc-Farland v. Railroad, 125 Mo. 253. In this case as the defendant had by his own action caused plaintiff's lot to be conveyed to an innocent purchaser for value and without notice, plaintiff was not in a position to ask for a rescission of the contract, or to set aside the sale, and could only be compensated by a money judgment for the amount of the injury he had suffered by the alleged fraudulent acts of the defendant, and under the plain command of the statute the cause was triable by a jury.

IV. It is also contended that the damages allowed

by the jury are grossly excessive; that the defendant, if liable at all, is only responsible for that portion of the profits realized on the sale of plaintiff's lot, which he received, and should be exempt from any charge for the half paid by him to his associate Harris, and that he should have been allowed for a number of expenses he incurred in making the sale to Dr. Tomlin, such as commissions paid to Aiple and Hemmelmann, who made the sale. As to the commissions, it is settled law in this State that an agent who has been guilty of fraud in the transaction of his principal's business, forfeits his right to commissions as such. As said by the Court of Appeals in its first opinion in this case: ''When because of such conduct he is called upon to make good the loss, which his principal sustains, he cannot recoup that loss in such circumstances as appear here by claiming the commissions which would have accrued to him by faithful conduct.'' As to the other proposition, that the defendant was chargeable only for the half of the profits which he and Harris received on the sale to Dr. Tomlin, we think it is clear that he was responsible to plaintiff for the loss or damage which the plaintiff suffered by his fraudulent and unfaithful conduct in the transaction of the business. He stood in a relation of trust and confidence to the plaintiff and he was liable to the plaintiff for the damage which plaintiff sustained by his fraudulent conduct, and it is immaterial what disposition he made of the profits if plaintiff did not reap them. [Davis v. Hoffman, 167 Mo. 573.]

V. Finally, it is asserted that the instructions were inconsistent and erroneous. This assignment harks back to the original contention that the cause of action alleged was not proved. As we have already disposed of that insistence, it is unnecessary to say more on that subject. As to the objection that the instructions fix an improper measure of damages, we find

no error in them on that account, as plaintiff was entitled to recover the amount of damages which he suffered without any deduction for commissions to defendant. As to the further complaint that the instructions assumed as true facts which were in dispute, the instructions are not obnoxious to that criticism. It was left to the jury to find from the evidence the facts upon which their verdict was based.

Upon a careful review and examination of all the grounds alleged for the reversal of this cause, we find no reversible error and the judgment of the circuit court is affirmed.

*Burgess, P. J.,* and *Fox, J.,* concur.