**Linnie ACY, as Administratrix of the Estate of Wesley Acy, Deceased, Respondent,**

v.

**INLAND SECURITY COMPANY, a Corporation, N. P. Laughlin and George F. Kirshner, Appellants.**

No. 22237.

Kansas City Court of Appeals.

Missouri.

Jan. 9, 1956.

Dwight Beals, Kansas City, for appellants.

Dwight Roberts, Earl J. Boughan, Eugene F. O'Keefe, Kansas City, for respondent.

BROADDUS, Judge.

This is an action for fraud and deceit. Plaintiff had a verdict and judgment for $3,889.68 actual and $3,000 punitive damages. Plaintiff, Linnie Acy, as administratrix of the estate of Wesley Acy, her deceased husband, instituted this action. Wesley Acy died on June 5, 1951. The named defendants were Inland Security Company, N. P. Laughlin, George F. Kirshner and Eileen Cusack. At the close of the evidence

the court sustained the motion of Eileen Cusack for a directed verdict, and later on set aside the verdict as to the defendant George F. Kirshner and entered judgment in his favor. Defendants Inland Security Company and N. P. Laughlin have appealed.

On August 25, 1939, Wesley Acy, then a single man, acquired the property at 1705 Wabash Avenue, in Kansas City, Missouri, for $2,750. On April 1, 1947, he executed a note in the amount of $1,325, and a deed of trust to defendant, Inland Security Company, securing the same by the Wabash Avenue property. On May 24, 1950, the above note and the deed of trust were sold with recourse by the Inland Security Company to the South Side Federal Savings and Loan Association, Kansas City, Missouri, for $954.97.

In November, 1950, Acy, then suffering with cancer of the stomach, called on the defendant, N. P. Laughlin, vice-president of Inland Security Company, and trustee in the aforesaid deed of trust. Acy testified that he told Laughlin that "I was slipping behind in my payments on account of sickness, and I was going to have to sell" the house; that Laughlin "told me I had better let him sell it for me; that he could get a lot more for it than I could; and I told him to go ahead and sell it. Q. Did you say anything about the payments due on the property? A. Yes, I told him I was getting behind with my payments; and Mr. Laughlin said that would be all taken care of when the property was sold."

Sometime in February, 1951, Laughlin came to Acy's home and told Acy that he, Laughlin, had a buyer for the property; that he had "a $500 down payment;" that he was going to sell the property for $4,200, and that he would see Acy the following Friday. No subsequent meeting took place, and Acy thereafter attempted to contact Laughlin on numerous occasions, but to no avail. Acy received no further word from defendants or the South Side Federal Savings and Loan Association until March 28, 1951. The Inland Security Company on that date advised Acy by letter that the aforesaid property was foreclosed by the legal holder of the mortgage, on March 26, 1951, and demanded possession of the property on or before April 6, 1951.

The above note at the request of the South Side Federal Savings and Loan Association came back into possession of the Inland Security Company on March 17, 1951. Defendant Laughlin, on March 2, 1951, and while legal title to the note was held by the South Side Federal Savings and Loan Association, started publication of a foreclosure notice on the property, not under instructions of the holder of the note, but in behalf of the Inland Security Company. Acy, in his deposition, testified that he had no knowledge of the foreclosure. He was an uneducated man; "unable to read or write."

Defendants, under the foreclosure notice, purported to sell the property to Eileen Cusack, sister-in-law of defendant Laughlin, on March 26, 1951 for $1,050. She was a straw party. No consideration was paid. On April 1, 1951, Laughlin executed a trustee's deed to the property to Eileen Cusack. She in turn, on April 10, 1951, executed a warranty deed to Jesse J. and Clara I. Cannon, husband and wife, for the sum of $4,250. Eileen Cusack did not receive any of the consideration. She had no recollection of receiving title to the property under the foreclosure; did not recall the warranty deed to the Cannons, and did not know Wesley Acy or the Cannons.

Defendants' first point is that the trial judge had no authority or jurisdiction to hear this case.

The transcript recites that "Honorable William M. Kimberlin, Judge of the 17th Judicial Circuit was transferred by order of the Supreme Court to the 16th Judicial Circuit for a period of one week beginning May 24, 1954, at the request of Honorable Joe W. McQueen, Presiding Judge of the Circuit Court of Jackson County, at Kansas City, thereby to be assigned by said Presiding Judge. Thereupon, the Honorable Joe W. McQueen, Presiding Judge of the Circuit Court of Jackson County, at Kansas

City, does hereby assign the said Hon. William M. Kimberlin to hold court in the courtroom designated 'Division One' in the Courthouse in Kansas City, Jackson-County, Missouri."

Defendants assert that: "The Supreme Court must designate in what division the assigned judge is to sit"; that there is no legal authority "for such delegation of power to the Assignment Judge" of the Jackson County Circuit Court.

42 V.A.M.S., rule 11.01 adopted by our Supreme Court states: "Under Section 6 of Article 5 of the Constitution the Supreme Court may temporarily transfer a judge of any * * * circuit court, with the consent of such judge, to any other * * * circuit court: (a) when a * * * circuit court requests the transfer of a judge to it; * * *." Rule 11.02 says: "A judge so transferred, during the period designated shall possess the same powers * * as a judge of the court to which he is transferred." And Rule 11.04 states: "Circuit Judges, sitting either by request of the regular judge or by transfer order of the Supreme Court, may hold court in the same county and at the same time either with or separately from the regular judge or judges of the circuit."

Under the above Rules, Judge Kimberlin was transferred by order of the Supreme Court to the "16th Judicial Circuit." That order authorized him to act in that circuit. The circuit court of Jackson County, although composed of several divisions, constitutes but one court. In re Ward Parkway, 188 Mo.App. 567, 176 S.W. 529. It should also be pointed out that defendant never objected at any time to Judge Kimberlin trying the case, and thus are in no position to complain. Our Supreme Court has held that the question is one of error and not of jurisdiction. Brinkerhoff-Faris Trust and Savings Co. v. Gaskill, 356 Mo. 61, 201 S.W.2d 274.

■■ Defendants' second contention is that plaintiff's petition fails to state a claim on which relief can be granted.

The petition states in substance that Acy was the owner of the property concerned; that he received a loan from Inland Security Company, secured by a deed of trust on said property with Laughlin named as trustee; that he (Acy) became delinquent in his payments and in November, 1950 went to Inland's office and told Laughlin, Vice-President of Inland, that he could not continue to make the payments on his property because he had an incurable malignant growth in his abdomen; that he had to sell the property to secure funds for his care for the remaining time he had to live; that Laughlin informed him that he would take care of the matter of payments and for him not to worry about that, and he, with the assistance of the other defendants, would sell the property for him and for him not to worry any more about this and to wait until he heard from defendants; that Acy fully and completely relied upon these statements and had full confidence in the integrity of the defendants; that relying upon said statements he made no further payments and received no further notice about arrearage in payments; that in February Laughlin informed Acy he had a purchaser and $500 in earnest money had been put up and the sale would be closed in a short time for $4,000; thereafter on March 28, 1951, Acy received a letter from Inland signed by Laughlin, informing him that the lien against his property had been foreclosed; that on April 1, 1951, Laughlin, as trustee for Inland, gave his trustee's deed conveying said property to defendant Eileen Cusack for $1,050; that on April 10, 1951, Eileen Cusack conveyed said property by warranty deed to the Cannons for $4,000; that defendants and each of them wrongfully and fraudulently conspired and agreed together to cheat and defraud Acy; that in furtherance of said conspiracy defendants informed Acy not to worry or be concerned as they would take care of the sale of the property; that said statements were untrue and fraudulent and made for the purpose of defrauding and deceiving Acy; that at the time the statements were made the note was owned by the South Side Federal Savings and Loan Association and on

March 17, 1951, defendants purchased said note with the intent to foreclose the same unbeknown to Acy and to cheat and defraud Acy out of his equity; that Eileen Cusack did not purchase the property as the trustee's deed purported to show, but said deed was given to her in furtherance of the conspiracy and scheme to defraud Acy; that all of the acts of the defendants from November, 1950 up until the consummation of the foreclosure have been wrongful and fraudulent and a part of a conspiracy to cheat and defraud Acy; that defendants knew that their acts and statements were fraudulent and plaintiff was damaged thereby.

In the case of Bedell v. Daugherty, 362 Mo. 598, 242 S.W.2d 572, 574 it is said: "The elements of an action for fraud and deceit are well established. See Lowther v. Hays, Mo.Sup., 225 S.W.2d 708. 'It is essential, to state a cause of action of that character, to aver that such misrepresentations were false and so known to be by the defendant, and that such representations were made with the intention of deceiving plaintiff, and that plaintiff was deceived thereby, and, relying upon such promises and representations, he was induced to act to his injury.' Remmers v. Remmers, 217 Mo. 541, 117 S.W. 1117, 1121."

Defendants assert that the allegations contained in the petition amount to mere promises and not to existing facts. There can be no doubt of the general rule that alleged fraudulent representations must relate to a present or pre-existing fact, and that fraud cannot ordinarily be predicated on unfulfilled promises or statements as to future events. However, it can with certainty be said that the representation made by Laughlin to Acy that he (Laughlin) had a buyer for the property for $4,000 and that $500 in earnest money had been put up, was a statement as to a material existing fact.

In our opinion, the petition states a claim based upon fraud and deceit.

■ The next point is that the court erred in refusing to sustain defendants'

motion for a directed verdict offered at the close of all the evidence.

The evidence disclosed that the Inland Security Company, purporting to act as broker in the sale of the property, represented to Acy through its agent Laughlin that it had a *bona fide* purchaser for the property. The relationship between the parties was one of trust and confidence. It was the duty of defendants to treat Acy fairly—disclose all information and not misrepresent facts. Sandbrook v. W. L. Morrison Inv. Co., 209 Mo.App. 600, 239 S.W. 543. " 'The paramount and vital principle of all agencies is good faith, for, without it the relation of principal and agent could not well exist. So sedulously is this principle guarded that all departures from it are esteemed frauds upon the confidence bestowed.'" Van Raalte v. Epstein, 202 Mo. 173, 99 S.W. 1077, 1081.

In addition to being illiterate, Acy was also a very sick man. He was helpless and relied upon what Laughlin told him. Deviating from its fiduciary role, the Inland Security Company caused Laughlin, trustee in the deed of trust, to commence foreclosure on March 2, 1951, when the note was not legally held by it. The title to the note on that date, and until March 17, 1951, was in the South Side Federal Savings and Loan Association. Upon completion of this fraudulent act, and in furtherance of their scheme to defraud Acy, defendants gave a trustee's deed to Eileen Cusack, Laughlin's sister-in-law, for the purported sum of $1,050. Ten days later, at defendants' request she deeded the property to the Cannons for $4,250. Eileen Cusack did not have any knowledge of taking title to the property, nor did she recall executing a warranty deed to the Cannons. She was not acquainted with them or with Acy. No consideration was received or paid by her in this whole transaction. And neither Wesley Acy or plaintiff ever received any money from the sale of the property. We think the court ruled correctly in refusing to direct a verdict for defendants.

■ Defendants' fourth point is that the court "erred in admitting in evidence the

352

deposition of Wesley Acy for the reason the deposition was taken regardless of the affidavit and application for a continuance made by defendants through their attorney who was a member of the 66th General Assembly of Missouri then in session."

Section 510.120 RSMo 1949, V.A.M.S., provides that: "In all * * * cases pending in any court of this state at any time when the general assembly is in session, it shall be a sufficient cause for a continuance if it shall appear to *the court*, by affidavit, that any party applying for such continuance, or any attorney * * * of such party is a member of either house of the general assembly, and in actual attendance on the session of the same * * *; and on the filing of such affidavit *the court* shall continue such suit and any and all motions or other proceedings therein, of every kind * * *, *including the taking of depositions * *. *.*" (Italics ours.)

It appears from the transcript that due notice of the taking of the deposition on June 2, 1951, was given. The affidavit required by Section 510.120 was not filed with the clerk of the Court and no request was made of the *Court* to "continue * * * the taking of depositions." It seems clear that the statute requires that the affidavit be presented to the Court. The affidavit of defendants' counsel was filed with the notary before whom the deposition was being taken, but not (as defendants admit) until *"about halfway through the deposition."* Let us assume for the purposes of this case that defendants are correct in their assertion that it was only necessary for them to file the affidavit with the notary. Even then it was *not timely filed*. We hold that the court committed no error in admitting the deposition.

Defendants next contend that the court erred in giving Instruction No. 1 on behalf of plaintiff. The instruction is lengthy and we need not set it out. We have carefully considered it and, in our opinion, it comes within both the pleading and the proof. Defendants say it is repugnant to Instruction No. 3. The latter merely called the

jury's attention to the fiduciary relationship existing between Acy and defendants Laughlin and the Inland Security Company and their obligation to Acy. There is no merit to defendants' contention.

Defendants' sixth assignment is that Instruction No. 4 which dealt with the measure of damages was erroneous. The first two paragraphs of the instruction related to actual damages and were apparently taken from an instruction (No. 2) which met with the approval of this court in the case of Dunham v. 10th St. Garage & Sales Co., Mo.App., 94 S.W.2d 1096, 1100. The third paragraph dealt with punitive damages. Defendants say it is defective in not requiring a finding that defendants' conduct was wrongful and done intentionally. A mere reference to the language contained in the instruction refutes defendants' contention. The instruction says "and you further find that defendants' conduct as brought out in the evidence, was willful, wrongful and fraudulent, if so, and was with the intention of defrauding and cheating Wesley Acy, if so, then * * *."

Defendants also assert that there was "no substantial evidence to support punitive damages and the court erred in so submitting." In the case of Walters v. Larson, Mo.App., 270 S.W.2d 112, 116, this court said:

"In Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W.2d 1083, the rule relative to the allowance of punitive damages is stated, 93 S.W.2d loc. cit. 1088: '* * * the courts of this state seem now to be committed to the proposition that in cases of fraud and deceit punitive damages may be awarded where legal malice is present. Luikart v. Miller, Mo.Sup., 48 S.W.2d 867; Finke v. Boyer, 331 Mo. 1242, 56 S.W.2d 372. Moreover, by legal malice the courts have in mind simply the accepted theory of the intentional doing of a wrongful act without just cause or excuse, and not the necessity for the showing of any spite or ill will, or that the particular act was willfully or wantonly done. Luikart

v. Miller, supra; Lampert v. Judge & Dolph Drug Co., 238 Mo. 409, 141 S.W. 1095, 37 L.R.A.,N.S., 533, Ann.Cas.1913A, 351.'"

In our opinion, there was ample evidence upon which to base the instruction. We find it contains no prejudicial error.

 Defendants next contend that the verdict is not certain, but is ambiguous and void. They also assert that it is excessive. The verdict assessed plaintiff's actual damages at the sum of $3,264.48 "with interest at the rate of 6% from April 6, 1951 * * *." The court or clerk then figured the interest as amounting to $625.20, and judgment was entered for $3,889.68, as compensatory damages.

It is apparent that $3,264.48 is an excessive amount, because plaintiff's petition only asked for $3,014.24 as actual damages. No authority need be cited in support of the proposition that a verdict in excess of the amount claimed is excessive.

As to the interest it is to be noted that the jury allowed it from *April 6, 1951*, but did not compute the amount. Under Instruction No. 4 the jury was only authorized to allow interest from *May 26, 1951* (the date the suit was filed). It is no doubt true, as defendants say, that it was the duty of the jury to compute the interests due and to state the amount thereof in their verdict, Section 510.270 RSMo 1949, V.A.M.S. In the case of Home Trust Co. v. Josephson, 339 Mo. 170, 95 S.W.2d 1148, 1156, 105 A. L.R. 1063, our Supreme Court held that when "the ascertainment of the amount of interest is only a matter of mathematical computation" then it is proper "for the court to make the calculation and direct a verdict for the total amount due, including the interest." In the instant case the jury awarded interest based upon both a *wrong amount* and from an *incorrect date*. In

view of that situation can it be said that the ascertainment of the amount of interest was "only a matter of mathematical computation" and that the court or clerk was authorized to calculate it? We think not.

 Defendants' last assignment is that because defendants jointly filed a motion to set aside the judgment and enter one for defendants or in the alternative, grant a new trial, the court had no jurisdiction to sustain defendants' motion "as to George F. Kirshner only." The transcript recites that at the close of all the evidence defendant Kirshner filed a separate motion for a directed verdict. Section 510.290 RSMo 1949, V.A.M.S., provides:

"Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within ten days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict * * *."

It is clear that under this statute the court had authority to set aside the verdict as to the defendant Kirshner and enter judgment "in accordance with his motion for a directed verdict."

If plaintiff will, within 15 days from the date of filing this opinion, enter a remittitur in the amount of $875.44, the verdict in plaintiff's favor will be affirmed; in the amount of $6,014.24 as of the date of the original judgment, and the judgment, as so modified, will stand affirmed; otherwise the judgment will stand reversed and the cause remanded. All concur.