Comstock, Respondent, vs. Buckley and others, Appellants.

*December 8, 1909—January 11, 1910.*

*Bills and notes: Accommodation paper: Payment by person primarily liable: Subsequent transfers: Sale by broker: Repurchase in his own right: Fraudulent sale: Rights of holders.*

1. If an accommodation note, after being once negotiated, is paid at maturity by the primary debtor, it is thereby discharged and ceases to have any legal existence, at least as to the accommodation parties. *Marling v. Jones*, 138 Wis. 82, distinguished.

2. If a broker employed to negotiate an accommodation note makes an honest sale thereof within his authority, he may afterwards purchase it back in his individual capacity and thereby acquire a good title which he may again transfer to another.

3. But if the broker fraudulently sells the note and retains the proceeds in pursuance of a general purpose to embezzle such proceeds in fraud of the rights of his principal, he thereby, as between himself and his principal, becomes the primary debtor and cannot thereafter purchase the note so as to acquire the good title which the original transferee had by virtue of being a holder in due course.

4. If, after such fraudulent sale, the broker pays to the transferee the amount due on the note and receives it back, it reassumes in his hands the position it formerly occupied, and he can again transfer it to another, not an innocent purchaser, only within the limits of his own rights and authority.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed*.

Action upon a promissory note, $2,500, dated April 21, 1900, signed by J. O. & W. S. Buckley, a copartnership, payable to the order of *Thomas F. Somers,* at six months date, with six per cent. interest, and indorsed by *Thomas F. Somers, Charles Buehner, John Graf, Peter J. Somers, John Zilg, C. S. Otjen, H. F. Bosworth,* and *W. E. Haskin* in the order aforesaid. It appeared that said note, so indorsed without any consideration to the indorsers, but for the accommodation of a mining company in which they were all concerned and for which the two *Buckleys* were financial agents, was delivered to Henry Herman, as a note broker, to negotiate and pay over the proceeds to said agents; that said Herman during the life of said note did dispose of the same fraudulently, as claimed, to one Wight, an innocent holder, who paid value to Herman, and concededly obtained good title to the note. Herman, it is claimed, applied the proceeds to his own use without informing defendants that he had disposed of the note. At maturity the note was protested for nonpayment, and shortly thereafter, October 25, 1900, was paid by Henry

Herman and returned to his possession.    Thereafter, November 27, 1900, Herman sold said note for value approximating its face to the plaintiff, who had notice of its dishonor, the certificate of protest being attached, and who at the same time entered into an agreement with Herman for a definite date of extension of the time of payment.    At the close of the trial, upon these facts, the court directed a verdict for the plaintiff for the full amount.    From judgment on such verdict the defendants appeal.

For the appellants there were briefs by *Kronshage, McGovern, Goff, Fritz & Hannan,* and oral argument by *G. D. Goff.*

For the respondent there was a brief by *Roemer & Aarons,* attorneys, and *Henry J. Killilea,* counsel, and oral argument by *Mr. Killilea.*

DODGE, J.    The direction of a verdict for the plaintiff is sought to be supported, first, on the authority of *Marling v. Jones,* 138 Wis. 82, 119 N. W. 931, for that, as asserted, the accommodated party, and Herman as its agent, had actual authority, by force of the note itself, to negotiate it, which authority was not limited by the maturity of the note.    That rule of law was unambiguously adopted by this court upon weight of authority after carefully reviewing a conflict of decision elsewhere.    The right of the creditor was not predicated upon an innocent holder's immunity from equities as between the parties, but upon the view that no equities existed to defeat such a note; that the accommodation makers had, by proper construction of their instrument, agreed to pay any one who should lend the amount of the note to the accommodatee either before or after maturity.    This case presents a very marked difference in facts, for here, conceding that Herman acted within his authority, the accommodated party had once been accommodated when Wight lent money upon the note, which afterwards had been paid in full and returned to the original custody, all of which appeared upon the face of the

paper and doubtless was fully notified to any subsequent purchaser by the fact of maturity alone.   The question on this branch of the present case is therefore whether the true contract between the accommodation parties to negotiable paper and the accommodatee is that the latter may repeatedly incur indebtedness upon their credit.   The rule in the *Marling Case,* that the true construction of the contract authorized the accommodatee to borrow once on the accommodator's credit, even after the maturity of the note, was recognized as highly burdensome to the latter and fraught with much peril of inconvenience to commerce from its naturally deterrent effect on the granting of such accommodations.   The weight of authority in favor of the rule, however, was found to be so overwhelming as to overcome the countervailing considerations. No authority, however, has been cited or found in support of the idea that the ordinary meaning of the parties in making accommodation paper extends to repeated use of the accommodator's credit, and the reasons against such a purpose are even more numerous and cogent than those which have caused many courts to pause short of the conclusion reached in *Marling v. Jones.*   The accommodated party is of course the primary debtor.   It is expected when others by signing accommodation paper become substantially sureties for him, at least as between them and him, that he will pay the debt and protect the sureties from liability.   When he does so, and the note returns to his possession, it is hard to conceive any reason why the whole purpose of the transaction is not accomplished, and why the note, at least as to the accommodation makers, does not become discharged and cease to have any legal existence. It is a general rule of law that when an instrument upon which several are liable, some primarily and some secondarily, is satisfied by him who is primarily liable, a complete discharge results.   It no longer has legal existence.   *Jaffray v. Crane,* 50 Wis. 349, 7 N. W. 300; *Snyder v. Malone,* 124 Wis. 114, 102 N. W. 354; *Northern Bank v. Cooke,* 76 Ky.

340; *Logan Co. Nat. Bank v. Barclay,* 104 Ky. 97, 46 S. W. 675; *Williams v. Gerber,* 75 Mo. App. 18; *Wayne v. Sherwood,* 14 Barb. 633; *Rich v. Goldman,* 90 N. Y. Supp. 364; *Spies v. Nat. City Bank,* 174 N. Y. 222, 66 N. E. 736; *Reichert v. Kœrner,* 54 Ill. 306. That rule of the common law is perpetuated as to negotiable instruments by sec. 1679 of the Negotiable Instrument Act (Supp. 1906; Laws of 1899, ch. 356). People are presumed to act in the light of such rules of law. Obviously, however, if the limit of the right to pledge the credit of the accommodation makers is not fixed thus, there will be no certain limit short of the statute of limitations. In the ordinary course of business the accommodation paper is returned to the custody of him who pays it, which in the regular course of events should be the accommodatee. While in such case it is legally extinguished, it may continue in physical existence. There is no compulsion to destroy it, and it certainly is not uncommon for business men to retain upon their files paid and canceled negotiable paper as a convenient form of record. Thus it is possible at any time again to deliver such note to some third party, and, indeed, to repeat the operation indefinitely. We are satisfied that such is not the ordinary understanding in making accommodation paper, and that the safety of innocent holders does not require that such breaches of the terms of the accommodation should be held to re-arouse an extinguished liability against mere sureties. Our conclusion, therefore, upon this branch of the subject is that neither Herman nor his principal had authority from the document alone to sell or discount this note after it had once been discounted and paid at maturity by the primary debtor, of which transaction the plaintiff is conceded to have had actual notice in addition to that which might be imputed to him from the dishonor of the paper.

2. Justification of the action of the trial court is also attempted on the ground that, by the discount of the note for full value to Wight, he acquired a perfect title as against all parties, and that such title he might effectively transfer to an-

·other, although that other were· charged with notice of some defects in the title of some previous holder.   This is undoubtedly the general rule, and if the sale by Herman to Wight had been an honest one on Herman's part, within his authority as agent, then Wight might have sold the note back to Herman in his individual capacity and he have acquired a good title thereby which again he might transfer to another.   But if Herman sold the note fraudulently as a part of a general purpose to embezzle or appropriate to himself the proceeds thereof in fraud of the rights of his principal, a different rule must apply.   In that case Herman became the primary debtor as between himself and his principal.   It was then his duty to pay the debt represented by the note for which he had fraudulently received the consideration, and when he paid the money for the note to Wight the law will not permit him, or any one holding under him with notice, to assert that he paid it in purchase of an instrument which it was his duty to pay and discharge.   No such unlawful construction of his act can be indulged where the same act is open to the entirely legitimate construction of mere performance of his duty to pay the note.   *Andrews v. Robertson,* 111 Wis. 334, 336, 87 N. W. 190.   This principle, which is so trite as hardly to warrant citation of authority, is recognized by the Negotiable Instrument Law (sec. 1676—28, Stats.: Supp. 1906), which provides:

"A holder who derives his title through a holder in due course, and who is not himself a party to any fraud, duress or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to such holder."

If Herman made the sale to Wight fraudulently he could not, under this statute, acquire the good title which Wight held only by virtue of being a holder of the instrument in due course.   When it came back to his hands it reassumed the same position it formerly occupied, and he could dispose of it to another, not an innocent holder, only within the limits of his own rights and authority.   The question whether Herman

acted fraudulently in negotiating the note to Wight was involved in conflict of evidence either received or offered and much uncertainty of inference from such evidence and should have been passed on by the jury; as also the question whether his payment to Wight was an attempted purchase by him individually or payment of the note on behalf of his principal.

There are doubtless other grounds on which plaintiff may be entitled to recover in whole or in part against all or some of the defendants, but we find all of them so involved in conflict of evidence or of inference of fact that they cannot support the direction of verdict upon the present trial. Thus, although Herman did not pay over to his principal the actual proceeds of the sale of the note to Wight, which perhaps would raise an inference of fraud, that inference might be rebutted if it appeared that his arrangement or previous dealings with the *Buckleys* showed an understanding that he should retain such proceeds as a general credit to them on account, to meet calls on him as they might be made subsequently, or to offset advances theretofore made; of which, indeed, some vague suggestion appears. In such case the sale to Wight might be legitimate; Herman not a party to any fraud, and therefore free to buy the perfect title which Wight held. Then would arise the question whether he did buy it or merely make payment as *Buckleys'* agent: affected again by the inference to be drawn from their dealings as to the scope of his agency contract and duty. Again, there was some evidence offered or received that Herman had advanced or bound himself to advance $500 on this note when placed in his hands. Doubtless if he parted with value on the faith of the note he would have right therein as security to that extent. Whatever rights Herman in law had were doubtless transferred to plaintiff, in absence of actual participation by the latter in some fraud. Sec. 1676—20, Stats. (Supp. 1906); sec. 2605, Stats. (1898); *Webber v. Quaw,* 46 Wis. 118, 49 N. W. 830.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.