## MARIA HOELEY v. SOUTH SIDE BANK OF ST. LOUIS, Appellant.

### Division Two, January 6, 1920.

1. **NEGOTIABLE NOTE: Issued in Fraud: Transfer: Notice.** Plaintiff employed a real estate agent to buy for her, free of incumbrance, a certain property, and placed $6000 in his hands for that purpose. He paid the money to the vendor and caused the deed to be made to his employee, a "straw man," and caused said employee to execute a note for $4000 to a third party, and to secure it by deed of trust on the property, and then caused the employee to convey the property to plaintiff, who took possession, paid the taxes, collected the rents and made the repairs. After the note became due he paid the balance to said third party, who indorsed it and delivered it to him, together with the deed of trust, and without marking it paid he delivered it to defendant bank as a pledge to secure the payment of his personal note to the bank, which received it without actual knowledge of its fraudulent character, and afterwards demanded payment of plaintiff, who up to that time had no actual knowledge of its existence. *Held*, that the note and deed of trust originated in fraud against plaintiff, and since the perpetrator of the fraud could not have enforced the note in his own behalf no one who acquired it with notice, even before maturity, could do so; and although it be conceded that said third party was an innocent purchaser for value, and could pass good title to another, although said other had notice of the fraud, said perpetrator was not within that rule, which under the statute (Sec. 10028, R. S. 1909) is limited to one "who is not himself a party to any fraud," and therefore the note in the hands of said fraudulent perpetrator, after he took it up, was affected by the same infirmity which made it unenforcible by him in the first place; and since the bank, having acquired the note after maturity, was not a holder in due course, it was subject to the same defenses in its hands under said statute as it would have been had it been non-negotiable.

2. ————: ————: **Transfer After Maturity: Due Course.** Since the person who causes his "straw man" to execute a fraudulent note to a third party has no right to enforce it, the burden is on the holder who receives it at the hands of the perpetrator of the fraud, who has himself received it from said third party, to show that he is a holder in due course, and if such holder acquires it after maturity he is not a holder in due course under the statute (Sec. 10028, R. S. 1909), but receives it subject to the same defenses that would be available had it been non-negotiable.

3. ———: ———: **Innocent Purchaser.** The rule that where one of two innocent persons must sustain a loss occasioned by the fraud of a third, the loss must fall on the one who puts it in the power of the third party to commit the fraud, has no application to a transaction by which plaintiff employed a real estate agent to purchase a certain property for her and he with her money bought the property and caused it to be conveyed to his employee and then caused said employee to make a note to a third party and secure it by a deed of trust, and then after maturity paid to said third party the amount due, took it up, and delivered it to a bank as a pledge to secure his own debt; for his authority, real or apparent, did not contemplate the interposition of said "straw man" to place a mortgage on the property before its conveyance to plaintiff, and there was nothing in her attitude to lead the bank to believe she authorized any such dealings with the property.

4. ———: ———: **Purchase or Payment.** When the perpetrator of the fraud, who caused his "straw man" to execute a note to a third party, took it up by paying what was due on it, and it was indorsed by the payee and delivered to him, he did not take it by purchase; and the rule that where one not a party to nor liable on a note pays the holder out of his funds and acquires possession of it, the transaction is a purchase and not a payment, does not apply. The note was accommodation paper, and the perpetrator of the fraud was not a stranger to the transaction, which, therefore, was a payment and not a purchase of the note.

5. ———: ———: **Accommodation Paper.** An instrument signed, accepted or indorsed by one for the accommodation of another is accommodation paper, although the party for whose accommodation it was signed is not himself a party to the instrument. A "straw man" who executes a fraudulent note to a third party for and at the request of the perpetrator of the fraud, is the accommodation party under the statute (Sec. 10000, R. S. 1909), which, although it does not define accommodation paper, does define accommodation party as "one who has signed the instrument as maker without receiving value therefor and for the purpose of lending his name to some other person."

6. ———: **Accommodation Paper: Payment or Purchase: Discharge.** Under the statute (Sec. 10089, R. S. 1909) a negotiable instrument is discharged "by payment in due course by the party accommodated, where the instrument is made or accepted for accommodation;" and if the perpetrator of the fraudulent note, executed by his "straw man" to a third party for his accommodation, paid it when it fell due, it was discharged; and such payment is a good defense against a subsequent holder who acquired the note, after its maturity, from such perpetrator, for such holder is not a holder in due course.

22—280 Mo.

Appeal from St. Louis City Circuit Court.—*Hon. Thos. E. Hennings,* Judge.

AFFIRMED.

*Walter Diehm* for appellant.

(1) If one not a party to or liable on a note pays the holder of the note out of his own funds and acquires possession of and title to the same, the transaction is a purchase and not a payment. Wing v. Union Central Life Ins. Co., 181 Mo. App. 391; Van Hoose v. Machine Co., 169 Mo. App. 54; Vansaudt v. Hobbs, 84 Mo. App. 629; Swope v. Leffingwell, 72 Mo. 348; Marshall v. Meyers, 96 Mo. App. 643. (2) When Krembs acquired possession of the note and the deed of trust securing it from Moellenhoff, he did not have it marked "paid" or "cancelled," nor did he release the deed of trust of record; but, in fact, subsequently negotiated the same, and his conduct in thus negotiating the same amounted to a re-issuance of the note. The fact that he did not have the note cancelled and did in fact negotiate it is conclusive proof of his intention that the note and deed of trust should be kept alive. Sater v. Hunt, 66 Mo. App. 530. (3) The true owner of a negotiable promissory note indorsed in blank by the payee, cannot complain if he clothed the apparent owner with all the indicia of ownership and full power of disposition so that third persons are led into dealing with him. Such third parties will be protected even though they bought after maturity, where they purchased in good faith, for value and without notice. It is but an application of the principle that where one of two innocent persons must sustain a loss occasioned by the fraud of a third, it must fall upon the one who puts it in the power of the third person to commit the fraud. International Bank v. German Bank, 71 Mo. 197; Lee v. Turner, 89 Mo. 494; Neuhoff v. O'Reilly, 93 Mo. 169; Turner v. Hoyle, 95 Mo. 346; Wright Invst. Co. v. Frisco Realty Co., 179

Mo. 80; Clifford Banking Co. v. Donovan Comm. Co., 195 Mo. 283; Geradi v. Christie, 148 Mo. App. 75; Miller v. Peoples Savings Bank, 193 Mo. App. 507. (4) The holder of a negotiable promissory note indorsed in blank by the payee, is prima-facie the owner thereof, and is presumed to have taken it in good faith, for value, before maturity and without notice. Keim v. Vette, 167 Mo. 389; Horton v. Bayne, 52 Mo. 531; Johnson v. Murry, 72 Mo. 278; Fitzgerald v. Barker, 85 Mo. 13; Mayes v. Robinson, 93 Mo. 122. (5) While it is true that the transferee or indorsee of a negotiable promissory note transferred after maturity takes it subject to all equities attached to it in the hands of the payee, yet the equities are such as are connected with the note itself and not such as grow out of distinct and independent transactions between the original parties. Gullett v. Roy, 15 Mo. 399; Unseld v. Stephenson, 33 Mo. 161; Mattoon v. McDaniel, 34 Mo. 138; Arnot v. Woodburn, 35 Mo. 99; Cutler v. Cook, 77 Mo. 388; Knaus v. Gibbons, 110 Mo. 58; Kelly v. Staed, 136 Mo. 430; Hunleth v. Leahy, 146 Mo. 408; Gennel v. Hueben, 71 Mo. App. 291; Crawford v. Johnson, 87 Mo. App. 478; Annan v. Houck, 4 Gill. 325, 45 Am. Dec. 133; Young v. Shriner, 80 Pa. 463. In this connection it is to be borne in mind that the respondent is not a maker of the note in question nor even liable on the same because she acquired the property merely subject to the deed of trust.

*Karl M. Vetsburg* and *Charles H. Franck* for respondent.

(1) All the evidence shows that the transaction between Krembs and Moellenhoff was intended as a payment and discharge of the paper and not a purchase. Girardi v. Christie, 148 Mo. App. 75. (2) Regardless of intention, one who owes a duty to discharge an obligation cannot purchase it and continue it in force. Such an attempted purchase would in fact be a payment and a discharge. Powers v. Fouche, 14 N. Y. 406; Comstock

v. Buckley, 141 Wis. 228. (3) A note, paid by one who has no right to call on other parties for repayment, is no longer a valid contract, and has no legal existence. 8 Corpus Juris, sec. 815, p. 582. (4) Krembs, by reason of his having secured the consideration for the execution of said note and deed of trust, and by reason of his fraudulent conduct, was the principal debtor in the transaction and payment by him to Moellenhoff discharged the note and extinguished the lien of the deed of trust. The obligation of Krembs' "straw man," Miller, was in law and fact the obligation of Krembs. Comstock v. Buckley, 141 Wis. 228; Houtz v. Hellman, 228 Mo. 655; R. S. 1909, sec. 10089. (5) The note in suit being executed by Krembs' straw man, or *alter ego,* Krembs was not a stranger to the note, but was in law and fact the actual maker and the principal debtor in the transaction. Van Raalte v. Epstein, 202 Mo. 173; Houtz v. Hellman, 228 Mo. 655; Comstock v. Buckley, 141 Wis. 228; Hoffman v. Habighorst, 49 Ore. 394; Arnold v. Green, 116 N. Y. 573. (6) One who acquires negotiable paper after maturity, takes it subject to the defense of payment, even though he is an innocent holder for value. R. S. 1909, secs. 10022 and 10028; Girardi v. Christie, 148 Mo. App. 75; Kelly v. Staed, 136 Mo. 437; Williams v. Gerber, 75 Mo. App. 30; Vandagrift v. Investment Co., 144 Mo. App. 84. (7) The payment by Krembs to Moellenhoff was a discharge of the note and deed of trust, and the subsequent deposit of the same by Krembs with the defendant bank as collateral passed no title or interest to the bank. Vandagrift v. Investment Co., 144 Mo. App. 84; Williams v. Gerber, 75 Mo. App. 30; R. S. 1909, sec. 10089; Comstock v. Buckley, 141 Wis. 228; Jackson v. Johnson, 248 Mo. 680; Bishop v. Chase, 156 Mo. 158.

WHITE, C.—The plaintiff in this action seeks to enjoin the negotiation of a certain promissory note and deed of trust securing the same on her property, and prays for a cancellation of the note and the removal of

the deed of trust as a cloud upon the title. There was a judgment in the Circuit Court of the City of St. Louis for plaintiff, and the defendant appealed.

The facts of the case are all contained in an agreed statement signed by the parties, in substance as follows:

Maria Hoeley, of German birth, was, at all the times mentioned in the statement, a widow, spoke the English language indifferently, and was unable to read or write it. One Herman J. Krembs was a real estate agent and notary public in the City of St. Louis, for many years. had been the agent of the plaintiff's husband before the latter's death, and thereafter acted as agent of the plaintiff in certain real estate transactions. Krembs was indebted to plaintiff in matters arising out of various business transactions other than the one under consideration. All business which he had in charge for the plaintiff was conducted in the German language.

On or about the twenty-second day of December, 1905, the plaintiff employed Krembs to purchase for her, free and clear of incumbrance, the property in suit. She provided Krembs with six thousand dollars with which to make the purchase, the same being the proceeds of collections which Krembs had made for her.

Krembs on that day caused a contract of purchase to be made with the owner of the real estate mentioned, for the sum of six thousand dollars, payable in cash, and caused one Franz Richard Miller to sign the contract as purchaser. Miller was unknown to plaintiff and was at the time in the employ of Krembs and acted for him in the capacity of a "straw man."

Afterwards, on the eighth day of January, 1906, without the knowledge, consent or authority of plaintiff. Krembs caused the owner to execute a deed conveying the property to Miller for a consideration of six thousand dollars. The deed, a general warranty, is set out in the statement, and recites a consideration of six thousand dollars. Krembs at that time paid the vendor, owner of the land, the purchase price of six thousand dollars. On the same day, without the knowledge or

consent of the plaintiff, Krembs caused Miller to execute a note for four thousand dollars and interest and a deed of trust on the property to secure the same. The note was payable in three years.

Krembs, thereupon, without the knowledge or consent of the plaintiff, sold and delivered the deed of trust and note to H. Moellenhoff for the sum of four thousand dollars, which was paid to Krembs and which Krembs retained.

Four days later, on the twelfth of January, 1906, Krembs caused Miller to execute a warranty deed conveying the said property to the plaintiff for a recited consideration of six thousand dollars. The deed contains this clause: "This conveyance being subject to an incumbrance of four thousand dollars executed by the party of the first part duly filed for record." The plaintiff was unaware of such recital and was in ignorance of the existence of the deed of trust; the knowledge of its existence was falsely and fraudulently concealed from the plaintiff by Krembs; she believed her property to be clear of any incumbrance whatever.

After the plaintiff acquired title she took possession of the property, collected the rents, paid the taxes, insurance, water license and repairs; all without knowledge of the existing deed of trust. Krembs, at no time after purchase the real estate for plaintiff, as aforesaid, acted as her agent for the purpose of managing the property, but said Maria Hoeley managed the same herself.

Krembs, without the knowledge of plaintiff, paid Moellenhoff the interest on the four-thousand dollar-note and when it fell due, January 8, 1909, he paid Moellenhoff the sum of one thousand dollars and caused it to be extended for three years. Thereafter he continued to pay the interest on the remaining three thousand dollars until the expiration of the extension. On March 20, 1912, after such expiration, Krembs, without the knowledge of plaintiff, paid Moellenhoff three thousand dollars by his check, and Moellenhoff thereupon delivered

the note duly indorsed by him, the deed of trust and insurance policies connected with the loan, to Krembs.

Krembs held the note and deed of trust in his possession without marking the same paid and without causing the deed of trust to be released, until October 11, 1912. At that time he delivered the note and deed of trust to the defendant bank as a pledge to secure the payment of his personal note in the sum of two thousand, seven hundred and fifty dollars. Afterwards Krembs paid the plaintiff bank the sum of two hundred and fifty dollars on account of said note, leaving a balance due of twenty-five hundred dollars.

In March, 1915, Krembs committed suicide, and the bank presented its claim against his estate in the probate court and the same was allowed.

After the death of Krembs the defendant bank demanded of plaintiff payment of the balance due on the four-thousand-dollar note, and that demand "was the first intimation or knowledge by plaintiff of the existence of said note and deed of trust and of the pledge of the same to the defendant." Thereupon the plaintiff brought this proceeding to enjoin the disposition of the note and deed of trust and procure cancellation of the same.

Other facts stated in the stipulation show the advertisement for sale of the pledged note, the advertisement of the real estate by the trustee in the deed of trust, and a sale of the same and purchase by the defendant company, all after this suit was filed. Before the sale of the real estate and of the note the plaintiff duly notified all persons concerned by *lis pendens,* and other written notices, of the filing of this suit and that the note had been paid and said sale notices were of no effect.

I. The note and deed of trust against the plaintiff's property originated in fraud and were without consideration moving to her. It cannot be claimed and is not contended that in the hands of Krembs the note

could have been enforced against the plaintiff's property.
He received from her the full amount
**Negotiation by Perpetrator of Fraud.** of cash necessary to make the purchase of the property, and without
her knowledge or consent attempted to create an indebtedness against the land in the sum of four thousand
dollars through the instrumentality of his straw man,
Miller. Manifestly, since Krembs himself could not
have enforced the note on his own behalf, anyone acquiring it with notice, even before maturity, would have
been in the same position; that is, Moellenhoff, if he
had had knowledge of all the facts of the transaction,
would have been in the same position as Krembs. [Sections 10025 and 10026, Revised Statutes 1909.]

It may be conceded that Moellenhoff was an innocent purchaser for value, and could pass a good title to
another, although the other had notice of the fraud.
[McMurray v. McMurray, 258 Mo. 1. c. 417.] But
Krembs was not within that rule. Section 10028, Revised
Statutes 1909, of the Negotiable Instrument Act, limits
its operation to one *"who is not himself a party to any
fraud"* affecting the instrument. The note, therefore,
in the hands of Krembs after he took it up was affected
by the same infirmity which made it unenforcible by
him in the first place. [Powers v. Fouche, 14 N. Y. St.
406; Comstock v. Buckley, 141 Wis. 228.] He was at
once under obligation to remove the debt from plaintiff's property. [Houtz v. Hellman, 228 Mo. 1. c. 669;
Van Raalte v. Epstein, 202 Mo. 173.]

II. Then what was the position of the defendant
bank and what is there in the circumstances to give it
a right which Krembs did not possess? When it was
shown that the right of Krembs to enforce the instrument did not exist the burden was on the defendant to
show it was holder in due course. [Sec.
**In Due Course.** 10029, R. S. 1909.] The bank, having acquired the note after maturity, was not a holder in du
course as that character is defined by the Negotiable

Instrument Act (Sec. 10022, R. S. 1909). And it was subject to the same defenses as if it had been non-negotiable. [Sec. 10028, R. S. 1909.]

Appellant asserts it is in better position than Krembs would have been, better than a purchaser with notice, or an ordinary purchaser after maturity, on the theory that where one of two innocent persons must sustain a loss occasioned by the fraud of a third, the **Innocent Purchaser.** loss must fall upon the one who puts it within the power of the third person to commit the fraud. A number of cases are cited in support of that proposition. [International Bank v. German Bank, 71 Mo. 1. c. 195; Priest v. Garrett, 191 S. W. 1048; Banking Co. v. Donovan Com. Co., 195 Mo. 1. c. 283.] It will be noticed that these cases are where the ''owner has by assignment conferred the apparent absolute ownership'' on the person with whom the purchaser deals; or, where the true owner of a note invests another with the usual evidence of ownership or with the full power of disposition. In all cases of that character the owner has consciously conferred upon another person authority, or acquiesced in the exercise of authority, which is relied upon by the purchaser.

There are no such facts in this case. While Mrs. Hoeley employed Krembs to make the purchase of specific property, there was no general agency, nor holding him out as general agent. The stipulation says she ''employed said Krembs to purchase for her'' this particular property. His employment as to the property extended no further than to make the purchase. At no time after purchasing the property did Krembs act as the plaintiff's agent in managing it, or in doing anything in connection with it. She managed it herself. He probably could have used the plaintiff's name in connection with the *purchase* in some way to compromise her and cause her to incur liability, but it could not be said that his authority, real or apparent, contemplated the interposition of a ''straw man'' to place a mortgage upon the property before its conveyance to

plaintiff. Much less was there any agency, real or apparent, at the time Krembs took up the note from Moellenhoff and negotiated the same to the bank as collateral security. There is nothing in her attitude nor in the circumstances which could lead the bank to believe she authorized any such dealing with the property. In fact, the bank did not act upon that belief at all, but apparently upon the belief that Krembs was an entire stranger to the original transaction and acquired the note for value from the payee. It had no knowledge, so far as the stipulation goes, that Krembs had anything to do with the original transaction in which the plaintiff authorized him to make the purchase.

It is further claimed by the appellant that although the note was transferred to the defendant after maturity it is subject only to such equities beween the original parties as are connected with the note itself and the plaintiff cannot take advantage of equities growing out of an independent transaction. Each of the cases cited under this proposition show some collateral or independent arrangement which, in an action on a note, is the basis of a set-off or counterclaim. Here the fraud of Krembs was not connected with anything else but the note; the note itself was without consideration, was conceived and executed in fraud. The straw man who executed it was in legal contemplation Krembs himself.

Equities.

The note in the hands of the bank was subject to the same attack as it would have been in the hands of Krembs.

III. The appellant asserts that when Krembs took up the note it was a purchase. It relies upon the rule that where one not a party to nor liable on a note pays the holder out of his own funds and acquires possession of it, the transaction is a purchase and not a payment. A number of authorities are cited in support of the proposition. The argument is that Krembs, not being a party to the

Payment.

note, when he paid the balance due on it to Moellenhoff
and took it up without marking it paid or releasing
the deed of trust, acquired title to it as by purchase
from an innocent holder and therefore passed a good
title for value to the defendant.

What is said above disposes of that contention.
Besides the transaction was a *payment* and not a pur-
chase. Krembs' relation to the note was not that of a
stranger. The paper was undoubtedly accommodation
paper. Although the statute does not define accommo-
dation paper, it does define accommoda-
tion party (Section 10000) as "one who
has signed the instrument as maker,"
etc., "without receiving value therefor and for the pur-
pose of lending his name to some other person." Miller,
then, was the accommodation party. He signed the
note for the purpose of lending his name to Krembs
for Krembs' purposes. Krembs, therefore, according
to all definitions, was the accommodated party. This
court, in the recent case of Overland Auto Co. v.
Winters, 210 S. W. 1. c. 3-4, had occasion to define the
party accommodated as one for whose convenience the
paper is made, or to whom the name or credit of an-
other person is loaned. His name need not appear on
the instrument. The rule is thus stated by Corpus
Juris: "An instrument signed, accepted, or indorsed
by one for the accommodation of another is accommo-
dation paper, although the party for whose accommo-
dation it was signed is not himself a party to the instru-
ment." [8 C. J. p. 254.] See also Skagit State Bank.
v. Moody, 150 Pac. (Wash.) 425; Delaware County
Ins. Co. v. Haser, 85 Am. St. Rep. 763, l. c. 769; Rea
v. McDonald, 68 Minn. 187, 71 N. W. 11. And there
are no authorities announcing a contrary doctrine.
Krembs was the party accommodated.

Under Section 10089, Revised Statutes 1909, of the
Negotiable Instrument Act, a negotiable instrument is
discharged: "(2) By payment in due course by the

*Accommodation
Paper.*

party accommodated, where the instrument is made or accepted for accommodation.''

Krembs, the party accommodated, paid the note in due course when it fell due; that was a discharge of the note. Payment is a good defense against a holder who is not a holder in due course. [Kelly v. Staed, 136 Mo. 430, l. c. 437; Section 10028, R. S. 1909.]

The judgment is affirmed. *Railey* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.